In re William C. HOBBS and Kathleen L. Hobbs a/k/a Kathleen L. Meade, Debtors.

William C. HOBBS and Kathleen L. Hobbs a/k/a Kathleen L. Meade, Plaintiffs,

v.

SUMMIT HOUSE CONDOMINIUMS and Summit House Condominiums Homeowners Association, Defendants.

Bankruptcy No. 80–03018.

Adv. No. 82–1144.

United States Bankruptcy Court,
E. D. Pennsylvania.

June 1, 1982.

John A. Wetzel, Wessel & Carpel, Philadelphia, Pa., for plaintiffs/debtors, William C. Hobbs and Kathleen L. Hobbs a/k/a Kathleen L. Meade.

W. Robert Landis, W. Robert Landis Associates, P.C., West Chester, Pa., for defendants, Summit House Condominiums and Summit House Condominiums Homeowners Ass'n.

Stephen Raslavich, Paoli, Pa., trustee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The instant case is before us on the complaint of the debtors seeking to enjoin the

defendants from discontinuing the electric service to the debtors. We conclude that a permanent injunction should be issued.

The facts of this case are as follows:[1] On November 14, 1980, William and Kathleen Hobbs ("the debtors") filed a petition for relief under chapter 7 of the Bankruptcy Code ("the Code").[2] On April 30, 1982, the Summit House Condominiums and/or the Summit House Condominiums Homeowners Association ("the defendants") caused a notice to be sent to the debtors stating that the debtors' electric service would be terminated if certain fees, totalling $1,085.00 were not paid. Those fees included charges for electric service as well as other condominium and assessment fees. After discussions between counsel for the parties, the debtors were told on May 4 or 5 that the electric service would not be discontinued if the past due electric bills were paid. On that day the debtors paid the defendants $294.00 (which represented the March electric bill).

On May 6, the debtors received another notice from the defendants stating that their electric service would be terminated if they did not pay $790.00 to the defendants. That sum included a bill of approximately $200 for electric service for the month of April as well as the prior condominium and assessment fees. When the debtors questioned the defendants about the second notice, they were told that, since the April electric bill was not paid when due on May 6, 1982, the defendants were going to terminate the debtors' electric service. The debtors protested, stating that the defendants knew that the debtors consistently paid their electric bill in the third week of every month and that the debtors had told the defendants that they would continue to do so. When the debtors received a third no-

tice from the defendants on May 10, 1982, reiterating the defendants' intention to terminate their electric service if the $790.00 was not paid, the debtors filed the instant complaint. On May 11, 1982, we issued an order temporarily enjoining the defendants from discontinuing electric service to the debtors and a hearing was subsequently held to determine whether a permanent injunction should be issued.

Although this case does not fall within the explicit language of § 366 of the Code, we believe that it should be governed by the underlying principles enunciated therein. While § 366 prohibits a "utility" from terminating service because of the filing of a petition for relief, the underlying reason prohibiting the discontinuance of service is that the service being supplied is monopolistic in nature and comparable service cannot be obtained elsewhere. The electric company sells its electricity to the defendants (the condominium association) which, in turn, sells it to the debtor, *inter alios.* Thus, for all practical purposes, since the defendants supply the electrical service to the debtors, the defendants are the utility against whose monopolistic practices the debtor may seek protection. In the instant case, there was evidence that the debtors had consistently paid their electric bills for the past three or four years in the third week of each month. The debtors explained that it was impossible for them to pay it earlier in the month because their other bills fell due then. We conclude that, in this case, such a pattern of consistent (albeit late) payments of their electric bills by the debtors, coupled with the fact that, additional protection[3] is provided to the defendants in the form of a statutory lien on the debtor's condominium for unpaid charges assessed thereon (includ-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Although the chapter 7 case was, on motion of the debtors, converted to a case under chapter 13 on May 14, 1981, the debtors thereafter converted that case back to a case under chapter 7 on May 20, 1982.

3. Section 366 prohibits a utility from terminating service to a debtor unless the debtor fails to provide it with "adequate assurance of payment; in the form of a deposit or other security, for service after such date."

ing charges for electricity)[4] provides adequate protection to the defendants. Finally, we are also swayed in our decision herein by the fact that the notices sent by the defendants stated that the electric service would be discontinued if *all* condominium fees were not paid in full.[5] Since we conclude that a utility (or comparable entity such as the defendants herein) may only demand adequate assurance of the future payment of utility bills in exchange for the continuation of that utility service, we find that the defendants threatened actions were impermissible.

Predicated upon the foregoing rationale, we will enter an order enjoining the defendants from terminating the debtors' electric service as long as the debtors continue to pay their electric bills, as heretofore, in the third week of each month.

4. The debtors conceded that the defendants did have such a statutory lien status. *See* Pa.Con. Stat.Ann. tit. 68, § 3315(a) (Purdon Com.Supp. 1981–82).

5. The defendants stated at the trial, however, that notwithstanding the notices, they had told the debtors that they were only demanding the payment of the current electric bills in exchange for continuation of the electric service. Nevertheless, the notices did continually refer to the other charges and were, at the least, confusing to the debtors.