**In re Vivian ROBERTS, Debtor.**

**Vivian ROBERTS, et al., Plaintiffs,**

v.

**The BELL TELEPHONE COMPANY OF PENNSYLVANIA, Defendant.**

Bankruptcy No. 82–01624G.
Adv. No. 82–0974G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 2, 1983.

**102**

Michael Donahue, Chester, Pa., for debtor/plaintiff, Vivian Roberts.

Anne Marie P. Kelley, Richard J. Driscoll, Lawrence G. McMichael, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for defendant, The Bell Telephone Company of Pennsylvania.

Jonathan H. Ganz, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue presented by this class action complaint[1] is whether section 366 of the Bankruptcy Code ("the Code") compels a utility company to turn on service immediately after an order for relief is entered and

to then give the debtor twenty (20) days to furnish adequate assurance of payment where service to the debtor was terminated prior to the filing of the bankruptcy petition due to the non-payment of pre-petition service bills. We conclude that section 366 imposes no such obligation upon the utility company since that section is designed to protect debtors from a *cut-off* of *existing* service because of the filing of a bankruptcy petition rather than to induce the utility company to initiate or restore service because of the filing of a bankruptcy petition.

The facts of this case have been stipulated by the parties and are as follows:[2] From May of 1976, until February 3, 1982, The Bell Telephone Company of Pennsylvania ("Bell") provided residential telephone service to Vivian Roberts ("the debtor"). During that period, the debtor failed to establish or maintain a satisfactory credit rating and on February 3, 1982, Bell ceased to render telephone services to the debtor due to non-payment of her telephone bills. Sixty-nine (69) days later, on April 13, 1982, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code ("the Code"). As of that date, the debtor owed Bell $228.46 for telephone services rendered by Bell to the debtor prior to the filing of her petition. Thereafter, the debtor notified Bell that she had filed a petition in bankruptcy and demanded that Bell provide new telephone service to her residence. Bell requested that the debtor tender to it a security deposit of $75.00 as a condition of providing new residential service to the debtor. The debtor refused to tender the aforesaid security deposit and, consequently, Bell declined to provide new residential service to the debtor until ordered to do so by this court on April 23, 1982.[3] Bell has a policy of requiring a $75.00 security deposit from individual consumers seeking new residential telephone service who have an unknown credit rating or have a known unfa-

---

**1.** Rule 723 of the Rules of Bankruptcy Procedure provides that Rule 23 of the Federal Rules of Civil Procedure applies in adversary proceedings. *See Rules of Bankruptcy Procedure,* Rule 723, 11 U.S.C.

**2.** This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

**3.** On April 23, 1982, we ordered Bell to refrain from refusing to allow the restoration of telephone service to the debtor's residence.

vorable credit rating. On June 4, 1982, the debtor filed the instant amended class action complaint alleging that:[4] (1) Bell's refusal to restore telephone service to the debtor immediately upon the filing of her petition violated section 366(a) of the Code; (2) Bell's refusal to allow the debtor twenty (20) days to post a security deposit violated section 366(b) of the Code; and (3) Bell should be enjoined from continuing its practice of refusing to restore service to any debtor within twenty (20) days of the filing of a petition for relief unless a security deposit is first posted.

Section 366 of the Code provides:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

This is a matter of first impression in this district in that the debtor's telephone service was terminated, due to the non-pay-

ment of her telephone bills, *prior to* the filing of her petition in bankruptcy. Despite the fact that there *was no existing service* at the time the petition was filed, the debtor contends that section 366(b) obligates Bell to turn on service immediately after the order for relief is entered and to then give the debtor twenty (20) days to post a security deposit (N.T. 7/20/82 at 15). The debtor focuses on the term "refuse" in section 366. Since that section provides that a utility may not "alter, *refuse* or discontinue service" to a debtor solely on the basis of pre-bankruptcy debts for at least twenty (20) days after an order for relief is entered, the debtor contends that the inclusion of the word "refuse" in the operative phraseology of section 366 compels a utility to initiate or restore service where none existed at the time the order for relief was entered. To accept such an interpretation would, we think, thwart the will of the Congress as reflected in the legislative history accompanying section 366, which establishes that the purpose of the section is to afford debtors protection from a *cut-off* of *existing* utility service:

This section gives debtors protection *from a cut-off of service* by a utility because of the filing of a bankruptcy case. This section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility. The utility may not alter, refuse, or discontinue service because of the nonpayment of a bill that would be dis-

---

4. On July 20, 1982, we entered the following order:

2. The certified class shall consist of all individuals who:

(a) reside within the territorial jurisdiction of the United States Bankruptcy Court for the Eastern District of Pennsylvania; and

(b) have filed or will file a voluntary petition for relief under the Bankruptcy Reform Act of 1978, et seq., and

(c) list Defendant as an unsecured creditor; and

(d) have had their telephone service terminated by Defendant prior to the filing of the

voluntary petition for relief for non-payment of an obligation listed on the voluntary petition for relief; and

(e) request initiation of telephone service to their residence from Defendant within twenty (20) days of the filing of the voluntary petition for relief; and

(f) are denied such service until a security deposit is paid because they have an unknown credit rating or have a known unfavorable credit rating; and

(g) use telephone service primarily for non-business use, and business use, if any, is merely incidental.

charged in the bankruptcy case... Subsection (b) protects the utility company by requiring the trustee or the debtor to provide, as soon as practicable, not to exceed 30 days, adequate assurance of payment for service provided after the date of the petition. This subsection will prevent a utility from *terminating* service until there is a court hearing, if there is a dispute over what is adequate assurance (emphasis added).

Moreover, the Supreme Court of the United States has held:

When 'interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and *give to it such a construction as will carry into execution the will of the Legislature* ...' (emphasis added).

*Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374, 381 (1974) *quoting Brown v. Duchesne,* 19 How. 183, 194, 15 L.Ed. 595, 599 (1857). In any event, we do not think that section 366 was designed to make the filing of a bankruptcy petition a device to procure the immediate and guaranteed (twenty (20) days) restoration of utility service which had been turned off prior to the filing because of the non-payment of service rendered pre-petition.

Finally, as we pointed out in *In re Shirey,* 25 B.R. 247 (Bkrtcy.1982) and *In re Kelly,* 25 B.R. 249 (Bkrtcy.1982):

Section 366(b) can only be read in conjunction with Section 366(a). Section 366(a) states that a utility can only discriminate against a debtor *who has defaulted prior to filing* pursuant to Section 366(b); that is, by demanding security. *The utility cannot read Section 366(b) as giving rights to security if there has been no default* (emphasis added).

*quoting In re Coury,* 22 B.R. 766, 767 (B.R.W.D.Pa.1982).

In the case *sub judice,* not only was there a default by the debtor prior to the filing of bankruptcy, there was also a termination of service prior to the filing of bankruptcy because of that default. Under these circumstances, we conclude that Bell was entitled to request and receive a security deposit before restoring telephone service to the debtor.