**In re DANDI–LINE PLANTS, INC., Debtor.**

**Bankruptcy No. 82–7059.**

United States Bankruptcy Court, N.D. Alabama.

Feb. 28, 1983.

Robert B. Rubin, Birmingham, Ala., for debtor.

Ralph D. Porch and Arthur F. Fite, III, Anniston, Ala., for movant.

FINDINGS OF FACT AND CONCLUSIONS BY THE COURT UPON MOTION OF FURNISHER OF UTILITY SERVICE

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction* —

The above-styled case was commenced by a voluntary petition filed under Chapter 11,

Title 11, United States Code, and is pending before this Court under said chapter. The debtor is in possession of the property of the estate, no trustee having been appointed. After due notice to parties in interest, this case came before the Court on February 25, 1983, for a hearing upon a motion filed by Water Works, Gas and Sewer Board of the City of Piedmont [Alabama] (hereinafter referred to as the utility). This motion "requests the Court to permit the said utility to terminate all utility services" to Dandi-line Plants, Inc. (hereinafter referred to as the debtor) or, if the Court refuses, "to provide some modification of deposit paid by the [debtor] or to provide some other security to this [utility] in order to provide adequate assurance of payment." The basis of the motion is alleged to be the failure of the debtor to pay the weekly amounts due for gas services supplied to the debtor.

*Findings of Fact —*

At the hearing, the utility and the debtor were represented not only by counsel of record but also by representative executive officers, and no sworn testimony or other evidence was presented to the Court. By acquiescence of the utility, the debtor, and the Court, the hearing proceeded on an informal basis, with statements of the facts and a discussion of the problems and issues involved. The bankruptcy judge finds therefrom that the following facts are not in substantial dispute, and they are adopted as the findings of fact in this contested matter:

1. The utility is related to the City of Piedmont, Alabama, but is a separate entity therefrom. It furnishes a supply of flammable gas for heating and similar purposes to customers in the area of said city, including the debtor.

2. The debtor is engaged in the business of growing living plants for the commercial horticultural market and holds an inventory which cost in excess of $300,000.00.

3. The debtor's inventory of horticultural products is subject to a security interest held by Coosa Valley Production Credit Association, a creditor.

4. Maintenance of a suitably warm climate for the continued life of the horticultural inventory of the debtor, at this time of year and for the next four to six weeks, requires the debtor to burn enormous quantities of the gas furnished to it by the utility, at a price to the debtor of $3,000.00 to $4,000.00 per week, assuming seasonable temperatures. At the commencement of this case, on November 29, 1982, the debtor was indebted to the utility for gas and possibly other utility services in the sum of approximately $35,000.00, after credit for a utility-service deposit of $4,000.00. The net indebtedness figure has now risen to approximately $65,000.00.

5. Most of the debtor's horticultural products are marketed through cash sales, which market is practically non-existent at this particular season. Little activity in this market will occur until the Easter season, with Easter day being April 3, 1983. The debtor expects its sales during the Easter season to exceed a quarter of a million dollars, but how much of this would be due to be paid the secured creditors and how much, if any, would be available for payment to the utility was not suggested to the Court.

6. The debtor offered a payment of $2,000.00 to the utility by Monday, February 28, 1983. It also offered to seek the creation of a security interest in its inventory—to be superior to that of the present secured creditor—in order to insure payment to the utility of the debtor's bills for continuance of the gas service to its greenhouses, if the utility would indicate that this would be an acceptable solution to the problem between these parties.

*Conclusions by the Court —*

This contested matter is governed by 11 U.S.C. § 366(b).[1] Among other things, this

---

1. § 366. Utility service.

  (a) . . .

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for

subsection provides that the utility may discontinue service to the debtor if it does not furnish "adequate assurance of payment . . . for service," within 20 days after the date of the order for relief. The commencement of this voluntary case constituted the order for relief,[2] and, as noted, that occurred November 29, 1982. The debtor has not furnished such "adequate assurance of payment," within the nearly three months for which this case has been pending. The statutory provision which permits the utility to discontinue service to the debtor under these circumstances appears to be self-executing; however, the Court presumes that the utility may, as here, apply to the Court for an adjudication of the existence of the condition-precedent facts rather than to run the risk of an unwanted adventure into the land of claims of the debtor for damages and for sanctions against the utility.

Since no avenue has been suggested to the Court by which it might proceed to order a modification of the utility deposit or other security, so as to provide adequate assurance of payment, the Court has no access to the remaining provisions of the subsection in question, and the alternative relief sought by the utility does not require consideration by the Court.

The Court concludes that the utility is entitled to the primary relief sought, having established its right to terminate the gas service which it provides to the debtor. In the exercise of its equitable powers, however, the Court will stay the effect of this order through Friday, March 4, 1983, because the Court cannot be unmindful of the devastating effect upon the debtor's inventory, the debtor, and its other creditors, by a loss of the debtor's source of artificial heat for its greenhouses during this winter season. As an aside, the Court notes the possibility that the secured creditor may come forward with additional financial resources, to protect its security interest in the debtor's inventory. An order in accordance with the foregoing will be entered.

relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

