**In re Helena BROADNAX, Debtor.**

**Bankruptcy No. 82–05549K.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 28, 1984.

Rule 7052 (effective August 1, 1983).

Christine Shubert, Camden, N.J., for debtor.

Joseph P. Kane, John F. Egan, Philadelphia, Pa., for PGW and Phila. Facilities Management Corp.

James J. O'Connell, Philadelphia, Pa., standing trustee.

## OPINION [1]

WILLIAM A. KING, Jr., Bankruptcy Judge.

The issue before the Court is whether Philadelphia Gas Works ("PGW") can demand payment from the debtor for stolen gas before restoring her gas service even though she was living away from home at the time the gas theft occurred. For the reasons stated herein, we find there is insufficient evidence to connect the debtor with the tampering and gas theft which took place on her premises prior to the bankruptcy filing to require her to pay voluntary restitution to PGW. Therefore, we will grant the debtor's application for reinstatement of gas service upon payment of an adequate security deposit to PGW under § 366 of the Bankruptcy Code.

## FACTS

The debtor's home is located at 1543 South 32nd Street in Philadelphia, Pennsylvania. Gas service to this residence was shut off in July, 1977, for non-payment of arrearages owed to PGW. From September, 1977 to September, 1982, the debtor lived in Cambridge, Maryland, and left her home in Philadelphia in the care of a friend who agreed to pay all bills.

During a routine inspection of the debtor's home in February, 1981, PGW employees discovered that a gas meter had been removed from another residence located at 1528 South Napa Street and placed in the debtor's home. Gas service at the Napa Street residence had been voluntarily terminated by the customer in May of 1977, according to PGW's records. A PGW employee discovered that the gas meter was missing from the Napa Street residence in November, 1977. Therefore, PGW estimates that the gas meter was stolen and installed in the debtor's home sometime between May and November of 1977, enabling the occupants to receive stolen gas undetected by the gas company for a period of almost four (4) years.

On February 11, 1981, when the PGW representative first discovered the bypass, he removed the stolen meter and shut off the gas with a bypass blocker. PGW then mailed notices to the debtor at the South 32nd Street address on February 23rd and March 16, 1981, unaware that someone other than the debtor was living on the premises. These notices threatened legal action if the debtor did not contact PGW about the "gas irregularities" found at the premises on February 11th.

The debtor claims she had no contact with PGW during the five (5) years she was absent from her home. She says she first learned about the stolen meter and unauthorized use of gas in September, 1982 when she contacted PGW to regain service. It was then that she was informed by PGW representatives that her gas service would not be restored unless she made voluntary restitution in the amount of $3,887.16. It is the policy of PGW to refuse to restore gas service in cases of gas tampering and theft unless voluntary restitution is made by the customer.

On November 18, 1982, the debtor filed a petition in bankruptcy under Chapter 13 of the Bankruptcy Code. Her Chapter 13 Plan was confirmed on April 12, 1983. On April

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

13, 1983, the debtor filed the application now under consideration by the Court seeking reinstatement of gas service and offering to PGW a security deposit of $326, an amount equivalent to twice the average monthly gas bill of the debtor during the time she was a customer. The $326 security deposit would ordinarily constitute adequate assurance to the gas company under § 366 of the Code.

The debtor contends she should not be penalized for events which occurred at her home while she was living elsewhere and that PGW cannot demand restitution from her before restoring service because it is an attempt to collect a pre-petition debt in violation of § 366.

The position of PGW is that § 366 of the Code does not apply in cases of gas tampering and theft because PGW's refusal to restore service is based on public safety considerations and not solely on the basis of unpaid pre-petition debts. PGW argues that its policy of demanding voluntary restitution from the customer (the debtor-homeowner in this instance) should be upheld in this case despite the debtor's contention that she was not responsible for the tampering and gas theft.

## CONCLUSIONS OF LAW

Section 366 of the Code provides:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

The general rule as stated in § 366(a) is that a utility company may not refuse service to a debtor *solely* on the basis of an unpaid pre-petition debt. The insertion of the word "solely" into the statutory language of subsection (a) implies that there may be other grounds for the utility to refuse to furnish service. Another bankruptcy court has already so held:

In essence, a utility has the discretion to refuse service to any debtor for any reason which would validly constitute a ground for refusal if that debtor were not in bankruptcy, with the single exception of nonpayment for past services.

*Hennen v. Dayton Power & Light Co.,* 17 B.R. 720, 724 (Bkrtcy.S.D.Ohio 1982).

Because of the safety factors involved, and the risks posed to the public by those who tamper with gas company equipment, we believe that tampering and unauthorized use of gas constitute valid grounds for refusal to restore gas service or for conditioning restoration of service upon the payment of voluntary restitution. However, in order for this exception to the general rule to apply, there must be some evidence before the Court that the debtor either engaged in the illegal activity herself or authorized it. In the usual tampering situation, we can presume that the debtor authorized the tampering as long as the debtor was residing on the premises when the tampering occurred. In the case *sub judice,* there is little evidence pointing to an awareness on the debtor's part of her tenant's conduct during the time period in question. At trial, a PGW witness testified from notations made to the file that the debtor telephoned PGW about her gas account on March 1, 1981, but the debtor denies that she had any contact with PGW prior to 1982.

In conclusion, we find that the facts in this case can be distinguished from our recent Opinion in *Marie Webb v. Philadelphia Gas Works et al,* Bankruptcy No. 83–03458K, Adversary No. 83–2325K, slip op. March 27, 1984. In *Marie Webb,* we held that the debtor was not entitled to restored gas service upon payment of a security de-

posit because it appeared that the debtor was directly responsible for the tampering with PGW equipment and gas theft which occurred prior to the bankruptcy filing. Therefore, we will enter an Order directing PGW to reinstate the debtor's gas service upon payment of a security deposit as adequate assurance under § 366(a) of the Bankruptcy Code.