In the Matter of Mary Lee **WHITTAK-ER on behalf of herself and all others similarly situated**

v.

The **PHILADELPHIA ELECTRIC COMPANY.**

**Civ. A. Nos. 88–4898, 88–4899.**

United States District Court, E.D. Pennsylvania.

Oct. 5, 1988.

Michael Donahue, Community Legal Services, Philadelphia, Pa., for plaintiff (cross-appellant) Whittaker.

Anthony Barone, Philadelphia, Pa., trustee.

Charles Bowser, James Cousounis, Philadelphia, Pa., for defendant (appellant) for PECO.

## MEMORANDUM

GILES, District Judge.

The court considers an appeal by the Philadelphia Electric Company (PECO) and a cross-appeal by Mary Lee Whittaker (Whittaker). The latter represents a class certified by the bankruptcy court, seeking a reversal of the April 6, 1988 order and opinion of the United States Bankruptcy Court for the Eastern District of Pennsylvania. 84 B.R. 934. At issue is the proper interpretation and application of Section 366(a) of the Bankruptcy Code. 11 U.S.C. § 366(a).

Whittaker filed for bankruptcy under Chapter 7 on October 29, 1987. On November 2, 1987, she requested a temporary restraining order from the bankruptcy court directing PECO to restore electric service to her home. She also filed a class action complaint and a motion for class certification. Her complaint alleged, *inter alia*, that PECO was refusing electric service to, and discriminating against, debtors in violation of § 366. Whittaker challenged PECO's policy and practice of demanding that debtors establish "adequate assurance of future payment", in the form of a cash deposit equal to double the average monthly bill, as a condition to restoration of service terminated pre-petition for nonpayment of bills.

The bankruptcy court granted Whittaker's motion for class certification and ordered declaratory relief to the class on their claim that PECO had refused service to them and discriminated against them in violation of § 366. It ordered PECO to take all actions necessary to cease such policy and practice. Whittaker was award-

ed $20.00 in damages, but she and the class were denied any other monetary relief or attorneys' fees. The class was determined not to be entitled to a continuation of utility service past the initial twenty days provided for in § 366(b), unless they provided an adequate assurance of payment acceptable to PECO or unless they obtained a protective order.

PECO now appeals from the finding by the court below that its policy and practice violate § 366 as to Whittaker and the class. It also challenges the award of $20.00 to Whittaker. She and the class contend that the bankruptcy court erred in failing to find that PECO acted in contempt of court, rendering it liable for damages and attorneys' fees. They also challenge the determination that a debtor must post adequate assurance acceptable to PECO after the twenty day period provided for in § 366(b) has expired, on the grounds that the issue was not before the bankruptcy court.

### I. *Standard of Appellate Review*

■ In reviewing a bankruptcy judge's order, the district court shall not set aside findings of fact unless they are clearly erroneous. However, the district court has the power of plenary review of the bankruptcy judge's conclusions of law. 11 U.S.C. Bankruptcy Rule 8013; *In re: Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir.1986).

### II. *Refusal to Restore Electric Service in Violation of § 366*

■ PECO argues that 11 U.S.C. § 366(a) of the Bankruptcy Code does not require a utility to restore service to a debtor whose service was terminated pre-petition for nonpayment upon debtor's commencement of a bankruptcy case or upon the debtor's request for restoration of service within twenty days from the date of the order for relief. PECO contends that the language of § 366(a) prohibits the utility from "refusing" service to a debtor, but does not expressly prohibit a refusal of restoration of previously terminated utility service.

11 U.S.C. § 366 reflects a policy decision on the part of Congress that utility services to debtors are essential.

§ 366 provides:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

PECO cites *In re: Roberts*, 27 B.R. 101, 103 (Bankr.E.D.Pa.1983), in support of its position. In that case, the bankruptcy court held that § 366 was designed to protect debtors from a cutoff of existing service rather than to induce the utility to restore service.

In *Roberts*, the court stated:

Since that section [366(a)] provides that a utility may not 'alter, refuse or discontinue service' to a debtor solely on the basis of pre-bankruptcy debts for at least twenty (20) days after an order for relief is entered, the debtor contends that the inclusion of the word 'refuse' in the operative phraseology of § 366 compels the utility to initiate or restore service where none existed at the time the order for relief was entered. To accept such an interpretation would, we think, thwart the will of Congress as reflected in the legislative history accompanying § 366, which establishes that the purpose of this section is to afford debtors protection from a cutoff of existing utility service: ...

*Roberts*, 27 B.R. at 103.

On appeal, however, the district court declined to adopt the bankruptcy court's

interpretation of the term "refuse." It held that the specific facts of that case allowed it to uphold the bankruptcy court's order on separate grounds. *In re: Roberts*, 29 B.R. 808, 810 (E.D.Pa.1983). The utility's refusal to provide service was not based solely on the debtor's failure to pay for prepetition services, but also upon her failure to post a deposit with the utility which was required from all new customers with an unknown or unfavorable credit rating.

PECO further argues that the district court opinion in *In re: Kiriluk*, 76 B.R. 979 (Bankr.E.D.Pa.1987), establishes that § 366(a) does not cover restoration of terminated utility service. In *Kiriluk*, the bankruptcy court stated that it felt *Roberts* "was correctly decided" and that it was "probably consistent with Congressional intent." *Kiriluk*, 76 B.R. at 983.

I decline to follow the *Roberts* interpretation of the term "refuse." I agree with the bankruptcy court's decision below that the statute is not ambiguous and must be given its plain meaning.

In interpreting a statute, "our starting point must be the language employed by Congress, ... and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (citations omitted). The statute clearly and unambiguously states that a utility may not "alter, refuse, or discontinue service to" a debtor solely on the basis of filing for bankruptcy or because a pre-petition debt is owed. The three phrases "alter," "refuse," and "discontinue service to" are written in the disjunctive, demonstrating Congressional intent that each action is a separate action prohibited by the statute. If the term "refuse" meant only that the debtor's service could not be cut off, the phrase "or discontinue service to" would be superfluous. Therefore, the term "refuse" encompasses any denial of service, including the denial of restoration of utility service

In addition, a refusal to provide service to a debtor and a refusal to restore service to a debtor are indistinguishable, a semantic distinction at best having no practical effect. Under either usage, the debtor would not get electric service solely due to the filing for bankruptcy or a pre-petition debt. Such a result is prohibited by § 366.

The parties disagree whether the court below erred in its determination that restoration of service does not pose an unfair or onerous burden on the utility. However, the burden of a utility company complying with § 366 is not relevant to the equation of equities for a period of twenty days. The statute does not call for a balancing of a debtor's rights against the hardship on a utility. Subject to the special conditions set forth in § 366(b), not here applicable, § 366 protects absolutely a debtor's right to restoration of utility service where the service has been refused solely because the debtor filed for bankruptcy or because of the existence of pre-petition debt.

### III. *Discrimination Against the Class in Violation of § 366*

■ The bankruptcy court held below that PECO's policy of requiring adequate assurance of future payment from debtors prior to restoration of services, when it does not require any type of security deposit from any new residential customers, or similarly-situated non-debtors, is discriminatory in violation of § 366(a). In *Roberts* and *Kiriluk*, it was held that there had been no discrimination against debtors in requiring a security deposit because security deposits were also required of new customers. *See Roberts*, 29 B.R. at 810; *Kiriluk*, 76 B.R. at 984. However, both cases established that the lack of such a policy regarding new customers would have justified a decision in favor of the debtors. In *Kiriluk*, the bankruptcy court wrote:

> Delacora had the duty to treat Mr. Kiriluk as if he were a new customer. If it had no policy of demanding security deposits from any new customers, then it had a duty to restore service upon notice of the debtor's filing....

76 B.R. at 984.

Whether discrimination exists turns upon a finding as to PECO's treatment of new, non-Bankruptcy Code, customers.

The court below found, and it is not contested, that PECO "does not in fact ever request non-debtor residential customers to pay a deposit as a condition for receipt of service." Record, # 8, Finding of Fact, ¶ 12. Following the reasoning in *Roberts*, in the absence of a policy of requiring security deposits of new customers, PECO would have a duty to restore service to a debtor upon notice of the debtor's filing. *Roberts*, 76 B.R. at 984.

PECO makes several arguments in support of its position. It first argues that while it does not require a security deposit from new customers, it is permitted to do so under its state tariff. This argument is without merit.

Even assuming PECO has the power to demand deposits from new customers, it has elected not to do so unless they have filed for bankruptcy or have pre-petition debt. Furthermore, an examination of the Pennsylvania Utility Commission (PUC) regulations reveals that PECO is not permitted to demand payment of a security deposit in full as a precondition to restoration or continuation of service. The regulations allow non-debtor customers to pay a security deposit in installments. *See* 52 Pa.Code ¶¶ 56.31–56.65. Therefore, even if PECO has tariff authority to demand a security deposit of non-debtor customers, the authority to collect such deposits would be less burdensome on a non-debtor than on a debtor under PECO's present debtor policy.[1]

PECO next argues that, while it does not require a deposit from new customers, it does require that they pay any indebtedness owing to the company for previous service. Record, # 8, FF ¶ 10. It maintains that, as a practical matter, this is no different from requiring a security deposit from a debtor and may be less burdensome on a debtor because the arrearages of a terminated customer may be quite large. Under the *Kiriluk* and *Roberts* standard for determining if discrimination exists,

PECO contends that the court must look to whether the utility gains any leverage or advantage against the debtor. PECO maintains that a debtor would be treated more favorably than a new customer under the bankruptcy court's ruling because a "debtor-customer would not only have no requirement to pay an adequate assurance of future payment as a condition to restored service and continued service for a period of at least 20 days, but the debtor-customer would have no obligation concerning payment on the outstanding arrearages." PECO Brief at 27.

The anti-discrimination standard articulated in *Roberts* and *Kiriluk* is that a post-petition debtor is like a new customer and that a utility cannot demand more of its debtor "new customer" than it demands of other new customers. *Kiriluk*, 76 B.R. at 984. The court below found, based on the testimony of PECO's manager of credit services George Bastian, that PECO tempers its policy towards new customers "by allowing a non-debtor whose service is terminated and wishes services to be restored to pay 'even a small amount in order to have that service restored, provided ... they can pay something plus keep their bill current' if the customer 'doesn't have the ability to pay.'" The bankruptcy court found that no such dispensation is allowed to a debtor whose service is terminated. Record, # 8, FF # 11. These findings of fact are not contested.

Through these findings, the court concluded that a flexibility exists in PECO's policies as to non-debtors which is "totally lacking in its rigid policies as to the [debtors]," and that distinction constitutes discrimination. Record, # 8, at 23.

While I agree with the bankruptcy court's conclusion that PECO's policy discriminates against the debtor, I do not entirely agree with its analysis. The bankruptcy court compared a debtor with a non-debtor whose service has been terminated

1. PECO appears to have withdrawn this argument in its reply brief. It states:

    Whether Pennsylvania law requires PECO to allow the nondebtor ratepayer to establish the security deposit by way of installment plans is not an issue before the court because PECO does not dispute that it does not demand security deposits from nondebtors. PECO Reply Brief at 8.

for non-payment. I do not believe such a comparison is correct. Section 366(a) provides that a utility may not discriminate against a debtor on the basis of a pre-petition debt. In other words, a debtor should be considered as a new customer, one *without* debts or an unfavorable credit history. One of the primary purposes of the bankruptcy act is to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971) (citations omitted). The intention of § 366 is to wipe the slate clean for the debtor and provide him or her with "no-strings" utility service for a 20 day period.

If § 366 provided only that a utility may not discriminate against the debtor on the basis of filing for bankruptcy, the proper comparison would be between a debtor and a similarly situated non-debtor. However, § 366 also provides that a utility may not discriminate against a debtor on the basis that he or she did not pay a debt owed to the utility when due. Therefore, the proper comparison is between the debtor and a new customer *with no debt owing to the company.* PECO's requirement of a security deposit from a debtor, while no payment is required of a new customer, is discriminatory.

Finally, PECO contends that the court below did not apply the proper standard of discrimination in this case. It argues that the class must establish that (1) they are debtors, (2) utility service was terminated for pre-petition nonpayment of debt, (3) that the debtor was eligible to receive the benefit and (4) failed to receive the benefit while others of the same qualifications were afforded that benefit. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). PECO then argues that the class was not eligible for restoration of service because it did not meet the condition of eligibility which consisted of the establishment of adequate assurance of payment.

The issue here simply is *whether* the requirement of establishment of adequate assurance of payment for debtor is discriminatory when such a payment is not required of new customers. To argue that the debtor was not eligible for restoration because he or she did not make such a pre-petition payment circuitously avoids the issue.

The bankruptcy court's holding that PECO's policy of requiring adequate assurance of payment prior to restoration of services is discriminatory and violates § 366(a) is affirmed.

IV. *Discrimination Against Whittaker in Violation of § 366*

PECO contends that the facts of the class representative's individual case illustrate that no discrimination took place. PECO argues that, prior to her filing for bankruptcy, Whittaker was told that it would cost her $220.00 for reconnection. This was later adjusted to $170.00. After Whittaker filed for bankruptcy, she was told that she would have to post $160.00 as assurance of future payment. The utility contends that it obtained no advantage against Whittaker as a debtor because the amount she was required to post for restoration of service was actually lower than the pre-petition amount required of her.

As discussed above, Whittaker is entitled to be treated as a new customer without debt. As a new customer of PECO, she would have been required to pay nothing to receive service. As a debtor, she was required to pay a $160.00 security deposit. Therefore, PECO's requiring a security deposit of any amount discriminated against the debtor in violation of § 366(a).

V. *Whittaker's Damage Award of $20.00*

PECO contends that the court below erred when it awarded Whittaker monetary damages of $20.00 as "nominal damages." The bankruptcy court found that it was "doubtful that the Debtor provided solid proof of any actual damages" but that she was entitled to nominal damages for her loss of electricity for a period of five days. The bankruptcy court then cited *Carey v. Piphus,* 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978), for comparison.

PECO maintains that the holding of *Carey* forbids the award of nominal damages in excess of $1.00. Whittaker counters that the bankruptcy court's use of the term "nominal" was only a characterization of the amount of monetary damages awarded, i.e., a very small amount. Whittaker points out that in Finding of Fact ¶ 8, the bankruptcy court stated that the debtor had suffered "certain substantial inconveniences due to lack of electricity...." Whittaker also points to Conclusion of Law, ¶ 4, which states that the debtor is "entitled to monetary damages of $20.00...."

Based on the finding of fact below that Whittaker suffered certain actual inconveniences, I agree with Whittaker's position that she is entitled to assessable damages, although in a "nominal amount." I therefore affirm the bankruptcy court's finding that she was entitled to $20.00.

### VI. Continuation of Utility Service Beyond the Twenty Day Period Provided for in § 366(b)

The bankruptcy court held that the class was not entitled to continuation of service past the initial twenty day period set forth in § 366(b) unless they provide adequate assurance of payment to PECO or obtain a court order. Whittaker and the class argue that the court below erred in making this determination because the issue was not pled and was not properly before it. The order of May 11, 1988, denying plaintiff's motion for reconsideration from which the appeals are taken arguably acknowledges that the post-twenty day issue was not raised and need not be decided. *See* Record, # 9, 10. Because cross-appellants have withdrawn the issue, this court has no jurisdiction to consider it.

### VII. Damages and Attorneys Fees

Whittaker next argues that PECO's refusal to restore service or to "seek modification of the offered adequate assurance" has placed it in contempt of court. Whittaker Brief at 24. Whether Whittaker is referring to a payment of adequate assurance within the first 20 days in order to gain restored service or whether she is referring to the adequate assurance due after 20 days under § 366(b) is entirely

unclear. The issue of what assurance is due after 20 days under § 366(b) is not before this court. Whittaker specifically stated in her brief:

The Complaint and Amended Complaint contained only claims revolving around PECO's initial refusal to provide service within the first 20 days of the filing of the petition. Accordingly, any issue as to the propriety of a 366(b) deposit were [sic] not before the Trial Court.

Whittaker Brief at 27.

PECO appears to have briefed the issue of what constitutes adequate assurance after the 20 day period under § 366(b). *See* PECO Reply Brief at 17. Likewise, this issue is not before the court for the reasons explained above. Whittaker appears to have briefed the issue of what constitutes adequate assurance for restoration of service within the 20 day period, despite the bankruptcy court's ruling that no assurance was necessary. Whittaker admits this in her statement that "PECO refused to restore service and PECO refused an offer of adequate assurance that, *in the instant case, the debtor was not even required to make*. Whittaker Brief at 26. (Emphasis added).

The issue presented for appeal is:

Whether the Trial Court erred in failing to determine that [PECO] in discriminating against the plaintiff/debtor and in refusing to provide service for the first 20 days after the filing of the plaintiff/debtor's bankruptcy petition, acted in contempt of court, rendering PECO liable for damages and attorneys fees.

Cross Appellants' Statement of Issues to be Presented on Appeal, Record, # 2.

It should be noted at the outset that the bankruptcy court did not fail to determine that PECO acted in contempt of court. The issue was not raised below. Neither the complaint nor amended complaint makes any mention of contemptuous action. The court below found only that the debtor had recited no statutory basis for an award of attorneys fees.

Whittaker now contends that the mandatory language of § 366 creates the same effect as the automatic stay provision of § 362. Under § 362, violation of an automatic stay with the knowledge that a bankruptcy petition has been filed constitutes a willful act and a court may assess fines and award attorneys fees. *In re Demp,* 23 B.R. 239 (E.D.Pa.1982); *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976). Whittaker cites no case which has extended contempt penalties for violation of an automatic stay to other situations.

PECO argues that a court may impose an order of civil contempt only upon proof that the party "violated a specific and definite court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conduct...." PECO Reply Brief at 18 (citing *In re: Joseph S. Wagner,* 74 B.R. 898, 902 (Bankr.E.D.Pa.1987)). PECO contends that it had no knowledge that the order for relief or past judicial precedents required PECO to restore service immediately. It argues that the facts of this case are not appropriate for finding of contempt. It states that it received and refused Whittaker's offer of payment over time on October 30, 1987, acting on the belief that it was within its rights to do so. PECO then received a motion requesting restoration of service on November 3, 1987, and voluntarily agreed to restore service at the hearing of November 5, 1987. PECO argues that these facts show a "lack of knowledge of any specific and definite court order proscribing PECO from refusing to restore service" and also show the "opposite of contumacious conduct." PECO Reply Brief at 19.

I conclude that the violation of § 366 was not conduct in contempt of a court order. Courts have held parties in contempt for the violation of the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362, because of the special nature of that provision. The automatic stay is comparable to an automatic injunction. It acts as a specific and definite order of a court to restrain creditors from continuance of judicial process or collection efforts against the debtor. *See In re Associated Hobby Manufacturers, Inc.,* 33 B.R. 959 (Bankr.Pa. 1983).

However, section 366 is not comparable to an automatic injunction, nor is it a court order of any kind. Moreover, as seen with the different interpretations of § 366 discussed above, this was heretofore an unsettled area of law in our bankruptcy court. Short of instituting an action for a declaratory judgment, PECO had no way of clarifying the law or the correctness of its policy. Therefore, I affirm the bankruptcy court's finding that the cross-appellants are not entitled to either a finding of contempt or attorneys fees.

An appropriate order follows.