OPINION OF THE COURT
GARTH, Circuit Judge.
This case presents the question whether section 366 of the Bankruptcy Code,[1] preempts state public utility regulations which provide consumers with certain protective procedures prior to termination of utility service. The district court found no preemption and ordered Philadelphia Electric Company (PECO) to comply with the state regulations and effect an amortization schedule for post-petition arrearages incurred by the Begleys. Since we agree with the district court that section 366 does not, at least in the context of a Chapter 7 proceeding, pre-empt Pennsylvania’s utility regulations governing termination procedures, we affirm.
I.
Josephine and Daniel Begley filed a petition for bankruptcy under Chapter 7 on May 28, 1982. At that time, they were substantially indebted to PECO. PECO demanded and received an “adequate assurance” of payment of future bills in the amount of $312.00. Such an assurance is authorized by 11 U.S.C. § 366(b).
The Begleys failed to pay utility bills accruing after the bankruptcy filing. PECO applied the $312.00 assurance against post petition arrearages amounting to $591.87, and posted the Begley account for termination. Termination was forestalled upon receipt of an additional $467.85 from the Begleys. On November 15, 1982, new arrearages amounted to $355.24, and PECO again posted the Begleys’ account for termination.
Each time the Begley account was posted for termination, the Begleys sought relief from the Pennsylvania Public Utilities Commission (PUC) under 52 Pa.Code, chapter 56, which provides that prior to termination a ratepayer must be given the opportunity to amortize arrearages through a payment plan.[2] Each time, the PUC dismissed Begleys’ complaint, finding its jurisdiction pre-empted by the Bankruptcy Code.
The Begleys then filed for injunctive relief from termination. The Bankruptcy Court preliminarily enjoined termination. When the Begleys moved for class action certification, the bankruptcy court, uncertain of its jurisdiction, transferred the case to the district court. The district court remanded to the bankruptcy court to decide PECO’s outstanding motion which sought dissolution of the order restraining PECO from terminating the Begleys’ account, 30 B.R. 469. The bankruptcy court then permitted PECO to terminate Begleys’ service by dissolving the restraining order. The Begleys appealed this latter order to the district court, and also requested that the reference to the bankruptcy court be withdrawn.
*48 The district court withdrew the reference from the bankruptcy court on April 17, 1984, and invited cross-motions for summary judgment on the Begleys’ claims: (1) that section 366 did not pre-empt the provisions of 52 Pa. Code, chapter 56; (2) that the PUC’s refusal to take jurisdiction over the Begleys' dispute with PECO violated 11 U.S.C. § 525, (the Bankruptcy Code provision barring governmental discrimination against bankruptcy petitioners); (3) that this violation of section 525 gave rise to a claim under the Civil Rights Act, 42 U.S.C. § 1983; and (4) that when PECO applied the “adequate assurance” to subsequent arrearages, PECO engaged in a prohibited unilateral modification of the amount furnished as adequate assurance.
On June 11, 1984, the district court granted summary judgment in favor of the Begleys on their first claim and ordered PECO to enter into an amortized payment plan. It enjoined PECO from terminating Begleys’ service. It also granted summary judgment against the Begleys’ section 1983 claim, and against their, claim that application of the deposit to post-petition arrearages violated section 366(b), 41 B.R. 402.[3] PECO appeals, arguing that the Bankruptcy Code has pre-empted Pennsylvania’s procedures. In response, the Begleys claim that PECO remains subject to the provisions of the Pennsylvania Code, which among other things provides for no termination of service until after an attempt to negotiate a payment plan has failed.
II.
Section 366 of the Bankruptcy Code deals specifically with utility service to the debt- or and provides specific protections for both debtor and creditor. The debtor is protected against, discrimination by the utility based on pre-petition arrearages, under section 366(a):
(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
11 U.S.C. § 366(a).[4] Nevertheless, section 366(b) allows a utility to demand “adequate assurance” of payment of post petition bills, and allows termination for failure to post such assurance:
(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
11 U.S.C. § 366(b) (emphasis added).
The inclusion of these provisions in the Bankruptcy Code was designed to clarify the bankruptcy court’s power to prevent a utility from using its termination power to enforce payment of pre-petition debts, as long as adequate security for payment of future bills is provided to the utility. See 2 Collier on Bankruptcy at ¶ ¶ 366.01-.03 (15th Ed.1984). By the terms of section *49 366, a utility may not terminate the debt- or’s service for failure to pay pre-petition arrearages, but may terminate the debtor’s account if the debtor fails, within twenty days, to post adequate assurance of payment for post-petition services.
Section 366 is silent, however, as to the utility’s right to terminate where, as in this case, adequate assurance was posted initially, but subsequent obligations in excess of the amount of assurance were unpaid. Initially, we must determine whether the utility’s sole remedy in such a situation is to seek from the bankruptcy court an increase in the amount of assurance, as provided in section 366(b), and terminate only upon failure of the debtor to post such assurance, or whether the utility may seek termination immediately upon failure of the debtor to pay a post-petition bill, as PECO here seeks to do.
The restriction on termination in section 366(a) bars only those terminations which issue “solely on the basis” that a debt incurred prior to the bankruptcy order, was not paid when due. Thus, by implication, termination for failure to pay post-petition bills would not seem to be barred by section 366(a).[5] Accordingly, courts setting the amount of “adequate assurance” have considered the length of time necessary for the utility to effect termination once one billing cycle is missed. See In re Santa Clara Circuits West, Inc., 27 B.R. 680 (Bkrtcy.D.Utah 1982); In re. Stagecoach Enterprises, Inc., 1 B.R. 732 (Bkrtcy.D. Fla.1979). This reflects an understanding that the utility will be allowed to commence termination procedures once a post-petition payment is missed, despite the prior security or “assurance” deposit.
We believe that such an approach is consistent with the purpose and policy of seetion 366, which is to prevent the threat of termination from being used to collect prepetition debts, while not forcing the utility to provide services for which it may never be paid. See In re Security Investment Properties, Inc., 559 F.2d 1321, 1325 (5th Cir.1977); In re Penn Central Transportation Co., 467 F.2d 100, 102 (3d Cir.1972); 2 Colliers on Bankruptcy at ¶ 366.01 (15th Ed.1984). We thus hold that in a Chapter 7 proceeding, the appropriate course for a utility, upon non-payment of post-petition bills, is to seek termination of services, not to seek an increased amount of security in the bankruptcy court. Indeed, the Begleys concede as much, arguing not that termination is an inappropriate remedy, but rather that termination must be sought according to generally applicable Pennsylvania procedures.
III.
Having found that the Begleys’ failure to pay post-petition utility bills as they became due justified PECO’s resort to termination procedures as its only remedy, it remains for us to determine whether termination of service by PECO must be conducted according to state utility regulations (including regulations requiring the utility to amortize arrearages) or whether such regulations are pre-empted by the section 366(b) provision for adequate security. Further, we must determine whether the PUC’s jurisdiction over termination proceedings is pre-empted by the exclusive bankruptcy court jurisdiction over the bankrupt’s estate. We stress at the outset that these questions are presented here in the narrow context of a Chapter 7 liquidation, in which the bankruptcy court has no jurisdiction over post-petition wages or debts of the debtor.
*50 No court has yet decided whether section 366(b) pre-empts state regulations governing utility termination procedures. The PUC itself has previously decided that its jurisdiction over such procedures is preempted.[6] In Anyanwu v. Philadelphia Electric Co., 55 Pa.P.U.C. 221 (Pa.Pub.Util. Comm.1981), the PUC dismissed a similar complaint seeking an amortized payment schedule by a debtor in a Chapter 13 reorganization, finding that
[T]he Complainant’s filing of a petition for personal bankruptcy has pre-empted this commission from establishing any payment schedule with respect to any amounts owed by the Complainant to the Respondent. Accordingly, we must dismiss this Complaint for lack of subject matter jurisdiction.
Id. at 222. We read Anyanwu, however, as determining that the PUC’s jurisdiction was pre-empted rather than as a decision that its regulations were inapplicable. Further, Anyanwu involved a Chapter 13 reorganization, under which the bankruptcy court retains jurisdiction over both pre-petition and post-petition income and obligations, and even were it binding, Anyanwu would not settle the pre-emption question in the Chapter 7 context as it is presented here.
Section 366(b) in the present context has no provision limiting a utility’s freedom to act based upon post-petition arrearages. Moreover, because we have earlier held that once a Chapter 7 debtor permits post-petition debts to become delinquent the utility may commence termination proceedings, the bankruptcy court’s jurisdiction over the issue of adequate assurance under section 366(b) to avoid termination proceedings, is by that time no longer relevant. Once the termination remedy has been sought by the utility in a post-petition eon-text, the “adequate assurance” provision of section 366(b) no longer has vitality.
Nor does the Bankruptcy Code anywhere evidence an express intention to pre-empt state utility termination procedures in such a context. For an implied pre-emption to be found, generally,
The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives.
Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). Both the Supreme Court and this Circuit have been reluctant to find an implied pre-emption of state regulation of public utilities, such as railroads, by particular bankruptcy provisions. See Palmer v. Massachusetts, 308 U.S. 79, 60 S.Ct. 34, 84 L.Ed. 93 (1939); In Re Central R.R. of New Jersey, 485 F.2d 208 (1973) (in banc).
In Florida Lime Growers, state quality standards for avocados more restrictive than the federal standards were upheld against a pre-emption challenge, as the two standards could co-exist. Here too, the Pennsylvania regulation (52 Pa.Code 56.-151(3)) mandating an opportunity to amortize arrearages prior to termination of service for post petition arrearages, may similarly co-exist with a Chapter 7 bankruptcy proceeding.[7] As we explain later, the Pennsylvania regulations do not conflict with section 366(b) because the operation of section 366(b) concludes after the initial determination is made of the amount deemed to be an “adequate assurance of payment.” Once that determination has been made, the debtor is remitted to the procedures established by Pennsylvania re *51 specting any subsequent attempt on the part of the utility to discontinue utility services.
Since post petition bills are not claims on the bankrupt estate, and the amortized payments would necessarily be paid from future receipts, which themselves are not part of the estate, administration of the bankruptcy proceeding is not affected. Such a result is also consistent with the fresh start and anti-discrimination policies of the Bankruptcy Code, since a debtor, relieved of his pre-petition debts, would thus be treated like any other utility customer with respect to post-petition debts, i.e., he would be given the same opportunity to amortize arrearages available to all other utility customers prior to termination.
Nor would application of the amortization regulation involve the PUC, the Pennsylvania courts, and the bankruptcy court, in simultaneous and potentially conflicting determinations as to “adequate assurance,” 11 U.S.C. § 366(b). The bankruptcy court’s jurisdiction to order modification of “adequate assurance” is by the very terms of section 366(b) triggered prior in time to any determination by the utility to terminate the utility account. Once, however, termination procedures are set in motion, after compliance with both 366(b) and 56 Pa.Code § 56.151, “adequate assurance” to avoid termination under section 366(b) no longer remains an issue, and there would be no reason for the PUC, the Pennsylvania courts, or the bankruptcy court to consider the amount of “adequate assurance.”
Thus, as we read section 366(b), in order to forestall discontinuation of service by a utility, the trustee or the debtor must furnish an adequate assurance of payment. If the utility or any other party in interest who is aggrieved contests the adequacy of the payment, the bankruptcy court may order a reasonable modification. Once that modification has been ordered by the bankruptcy court, no further recourse to the bankruptcy court can be had under section 366(b) by any party. If after establishment of an adequate assurance amount the debt- or defaults on subsequent payments, the provisions of 52 Pa.Code, chapter 56 come into play and the utility may seek to discontinue service as its remedy for non-payment. But if it does, it must comply as well with all the other provisions of 52 Pa.Code, chapter 56, including that provision that requires the utility to make a diligent attempt to negotiate a payment agreement.
We accordingly hold that 52 Pa.Code § 56.151(3), requiring that utility customers be given an opportunity to amortize arrearages prior to termination, is not pre-empted by section 366(b) of the Bankruptcy Code, in a Chapter 7 liquidation proceeding insofar as post-petition obligations are concerned. To hold otherwise would withdraw from the bankruptcy petitioner the plethora of procedural protections against utility termination which are provided by state regulations. Indeed, we perceive no principled distinction between the PÚC procedures for amortization of arrearages which are the subject of this appeal and the PUC’s provisions for notice prior to termination (52 Pa.Code § 56.91); the PUC’s ban against termination of service on weekends and holidays (52 Pa.Code § 56.82); the PUC’s protections for tenants where the landlord ratepayer defaults (52 Pa.Code §§ 56.121-56.126); and the PUC’s protections for ratepayers who are under medical disabilities (52 Pa.Code § 56.113). It is clear to us that by granting bankruptcy courts the authority to set an adequate assurance of payment of post-petition utility bills, the Congress did not intend to pre-empt and render inoperative all state procedural protections provided to residential utility customers by state statutes and regulations.
IV.
PECO also contends that the bankruptcy court’s exclusive jurisdiction over all property of the bankruptcy estate bars the PUC from taking jurisdiction over the Begleys’ *52 petition to establish an amortization of arrearages. Title 28, section 1471(c) grants exclusive jurisdiction to the bankruptcy-court:
The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, whereever [sic] located, of the debtor, as of the commencement of such case.
28 U.S.C. § 1471(c). PECO contends that any order of the PUC directing amortized payment of the utility arrearages would necessarily interfere with the bankruptcy court’s exclusive jurisdiction over the bankrupt estate.
We are not convinced that such a conflict is inevitable. As defined in 11 U.S.C. § 541, the bankrupt estate does not include wages earned for personal services after the filing of the bankruptcy petition. See 4 Collier on Bankruptcy M 541.05, 541.-09[3]. Certainly, if the PUC were to order an amortization plan, it may limit any such order to future wages to avoid any possible effect on assets properly included in the bankrupt estate. Accordingly, we find that assertion of jurisdiction by the PUC over the Begleys’ petition for an amortization plan would not offend the exclusive jurisdiction of the federal court over the bankrupt estate.
V.
For the foregoing reasons, the judgment and order of the district court dated June 11, 1984 will be affirmed.

. 11 U.S.C. § 366.

. 52 Pa.Code § 56.151 provides:
§ 56.151. General rule.
Upon initiation of a dispute covered by this section, the utility shall:
(1) not issue a termination notice based on the disputed subject matter:
(3) make a diligent attempt to negotiate a reasonable payment agreement if the ratepayer or occupant claims a temporary inability to pay an undisputed bill; factors which shall be considered in the negotiation of any payment agreement shall include but not be limited to the size of the unpaid balance, the ability of the ratepayer to pay, the payment history of the ratepayer, and the length of time over which the bill accumulated.
Thus, a utility would be precluded from terminating a residential customer for an undisputed arrearage without first attempting to negotiate an extended payment plan.

. Although the district court retained jurisdiction over the issues of whether (1) PUC’s conduct violated 11 U.S.C. § 525, the antidiscrimination provision of the Code, or (2) whether the eleventh amendment bars an order directing PUC to enforce Pennsylvania's regulations, its order ultimately became final on September 26, 1984. PECO, however, had filed its notice of appeal on June 21, 1984, before disposition of these issues. The district court order of September 26, 1984 disposed of the retained issues, 46 B.R. 707. It declared that PUC's jurisdiction to oversee a payment plan was not pre-empted, but found that the PUC had not violated 11 U.S.C. § 525. It also held that mandatory relief against the PUC was barred by the eleventh amendment, since the Begleys sought to enforce a state created right in federal court. Under Cape May Greene, Inc. v. Warren, 698 F.2d 179 (3d Cir.1983), such a subsequent final order cures any jurisdictional defect and gives this court jurisdiction under 28 U.S.C. § 1291.

. In a Chapter 7 liquidation, the petition in bankruptcy court is the "order for relief.” 11 U.S.C. § 301.

. Bankruptcy courts are divided over the question whether the reference to pre-petition debts in section 366(a) limits the power to terminate for failure to post an assurance granted in section 366(b). One court has held that post-petition arrearages do not justify a demand for security, since section 366(a) only speaks of pre-petition arrearages. In re Coury, 22 B.R. 766 (Bkrtcy.W.D.Pa., 1982), while another has held that the mere filing of a petition allows a demand for security, even though the account was current at the time of filing, In re Santa Clara Circuits West, Inc., 27 B.R. 680 (Bkrptcy. D.Utah, 1982).

. In this appeal, however, the PUC has reversed its position, arguing here that it does have jurisdiction.

. Cf. 2 Collier on Bankruptcy § 366.03 at 366-4 (15th Ed.1984), which states that: "It should also be noted that, while relief may be available for the debtor or trustee under state tariffs or regulations, the jurisdiction of the bankruptcy court is paramount." (footnote omitted). This cryptic reference to state regulatory termination procedures seems to imply that such procedures would not be pre-empted unless they actually interfere with the jurisdiction of the bankruptcy court.