Kevin HANRATTY and
Patricia Hanratty

v.

PHILADELPHIA ELECTRIC
COMPANY, and Edward
Sparkman, Trustee.

Dennis MUCERINO and
Dorothy Mucerino

v.

PHILADELPHIA ELECTRIC
COMPANY, and Edward
Sparkman, Trustee.

Civ. A. Nos. 89–4307, 89–4308.

United States District Court,
E.D. Pennsylvania.

Nov. 15, 1989.

Margaret E. Taylor, Community Legal Services, Philadelphia, Pa., for plaintiffs.

T.H. Maher Cornell, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### INTRODUCTION

This is an appeal pursuant to 28 U.S.C. § 158(a) from final orders in these cases entered by the United States Bankruptcy Court for the Eastern District of Pennsylvania.

Plaintiffs Kevin and Patricia Hanratty filed a Petition for Relief under the Bankruptcy Code, Chapter 13, on December 5, 1988 (Bankruptcy No. 88–14259F, later also Adversary No. 89–0026F). At the time of the filing the Hanrattys were indebted to Philadelphia Electric Company ("PECO") in the amount of $282.00. On December 28, 1988 PECO sent a letter to the Hanrattys threatening termination of service unless they gave PECO a security deposit of $100.00 by February 6, 1989. On January 17, 1989 the Hanrattys filed a Motion for a Temporary Restraining Order and/or Preliminary Relief and for an Expedited Hearing. By Stipulation filed February 22, 1989 PECO agreed not to terminate service to the Hanrattys pending a decision in this adversary proceeding.

Plaintiffs Dennis and Dorothy Mucerino filed a petition for Relief under the Bankruptcy Code, Chapter 13, on November 6, 1988. (Bankruptcy No. 88–14028F, later also Adversary No. 88–2314F). At the time of filing the Mucerinos were indebted to PECO in the amount of $829.82. On December 5, 1988 PECO sent a letter to the Mucerinos threatening termination of service unless they gave PECO a security deposit of $90.00 by January 13, 1989. On December 16, 1988 the Mucerinos filed a Motion for Temporary Restraining Order and/or Preliminary Relief and for an Expedited Hearing. By Stipulation filed January 11, 1989 PECO agreed not to terminate service to the Mucerinos pending a decision in this adversary proceeding.

A hearing on both matters was held by the Bankruptcy Court on February 27, 1989. On April 27, 1989, the Bankruptcy Court entered an Order granting Summary Judgment in favor of the plaintiffs in both matters. PECO filed its notice of Appeal on May 23, 1989.

The appeal presented the following issues:

1. Did the Bankruptcy Court err when it held that, inasmuch as Philadelphia Electric Company does not seek deposits from new residential customers, it cannot demand deposits from debtors?

2. Did the Bankruptcy Court err when it interposed a standard or condition precedent that is not contained in the statutory language nor referred to in the legislative history, in order to cure a perceived defect?

The District Court's review of the Bankruptcy Judge's decision in the case is appellate. 28 U.S.C. § 158(a). The Bankruptcy Court's findings of fact are subject to review under a clearly erroneous standard and its conclusions of law are subject to *de novo* review. Bankruptcy Rule 8013; *In the Matter of Jersey City Medical Center,* 817 F.2d 1055 (3rd Cir.1987).

For the reasons given below, I reach the following conclusions of law on the issues raised by appellant PECO:

1. The Bankruptcy Court erred in its finding that, inasmuch as PECO does not seek deposits from new residential customers, it cannot demand deposits from debtors, as defined in the Bankruptcy Act, because the Bankruptcy Court's finding did not give effect to the mandate of 11 U.S.C. § 366(b) that a utility can demand a deposit not earlier than 20 days after the date of the order for relief.

2. The Bankruptcy Court erred when it interposed as a standard or condition precedent to a utility's requirement of a security deposit from a debtor more than twenty days after the date of the order for relief a requirement that a similar security deposit be required of non-debtors.

## DISCUSSION

The parties agree that this case is governed by Section 366 of the Bankruptcy Act, 11 U.S.C. § 366, which reads as follows:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

PECO concedes that, while its tariffs permit requiring a security deposit from residential customers, as a matter of policy and practice it does not do so. PECO does require a security deposit from customers who are under the protection of the Bankruptcy Act, if their account was in arrears at the time of the commencement of the case (The commencement of a voluntary case constitutes an "order for relief" pursuant to 11 U.S.C. § 301).

The purpose of § 366 is to permit a debtor to continue to receive postpetition utility service that may be monopolistic (*e.g.*, only one electric company services an area), and are essential to a minimum standard of living.

This section gives debtors protection from a cut-off of service by a utility because of the filing of a bankruptcy case. This section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility. The utility may not alter, refuse, or discontinue service because of the nonpayment of a bill that would be discharged in the bankruptcy case. Subsection (b) protects the utility company by requiring the trustee or the debtor to provide, within ten days, adequate assurance of payment for service provided after the date of the petition.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 60 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5846;[1]

The plaintiff debtors in these actions, and the Court below, maintain that the provision of § 366(b) permitting a utility to require a security deposit after twenty days from the order for relief is limited by the provision § 366(a). They rely on the following cases for the proposition that a utility, to avoid discrimination in applying the security deposit requirement must not require a greater security deposit than they would require from a new customer without any prior credit history with that utility: *Whittaker v. Philadelphia Electric Co.*, 92 B.R. 110 (E.D.Pa.1988); *In re Roberts*, 29 B.R. 808 (E.D.Pa.1983); *In re Kiriluk*, 76 B.R. 979 (Bankr.E.D.Pa.1987). These cases are inapposite, because they dealt with the restoration of service before the running of the twenty day period.

In *Roberts*, telephone service to the debtor had been terminated for non-payment of charges over three months before the bankruptcy petition was filed. The Bell Telephone Company of Pennsylvania ("Bell") had a policy of requiring a $75.00 deposit from individual consumers seeking new residential telephone service who had an unknown credit rating or a known unfavorable credit rating. The *Roberts* Court said:

"The Bankruptcy Court, 27 B.R. 101 (Bankr.1983), after fully reviewing the legislative history of Section 366 as well

---

**1.** The Senate Report differs somewhat from the House Report. See 124 Cong.Rec. H 11093 (Sept. 25, 1978) (remarks of Congressman Edwards). However, § 366(b) is derived from the Senate version of § 366 with the time period of § 366(b) increased to twenty days. *Id.*

as the relevant case law, concluded that Section 366 does not obligate Bell to turn on service immediately after the order for relief is entered and then give the debtor twenty (20) days to post a security deposit. That court, in making its determination, specifically noted the limited nature of the holding. The debtor's telephone service was terminated, due to the non-payment of her telephone bills, *prior* to the filing of her petition in bankruptcy. There *was no existing service* at the time the petition was filed. (Opinion of the court, p. 103) (emphasis original).

In affirming the court's holding, we note that the essence of the debtor's relationship with Bell is that of a new customer. As is true of all of Bell's customers who have failed to establish or maintain a satisfactory credit rating, Roberts was required to post a security deposit prior to initiation of service. To rule that Section 366(b) compels Bell to give service for twenty days without the posting of a deposit under these circumstances would be to turn the bankruptcy petition into a means of extracting greater services from Bell than it is required to give under the applicable Pennsylvania Public Utility Commission tariffs.

\* \* \* \* \* \*

The holding then is a narrow one where a Bell customer has, prior to the filing of a petition in bankruptcy, been terminated from Bell residential service in accordance with the applicable tariffs allowing for termination of service due to the failure to establish or maintain a satisfactory credit rating, that customer as a debtor in bankruptcy may be required, prior to the obtaining of new residential telephone service, to post the same security deposit as that required of a non-bankrupt Bell customer who has an unknown credit rating or a known unfavorable credit rating.

*Roberts, supra,* 29 B.R., at 809, 810.

In *In re Kiriluk, supra,* water service had been terminated for non-payment of charges one day before filing of the petition. Upon institution of the adversary proceeding an order was entered which re-stored service, *pendente lite.* The Court denied summary judgment because material facts were in dispute. It found, however, in *dictum,* that the utility "had the duty to treat Mr. Kiriluk as if he were a new customer. *In re Kiriluk,* 76 B.R. at 984. In so holding, the *Kiriluk* Court quoted the following from *In re Begley,* 760 F.2d 46 (3rd Cir.1985):

"The inclusion of these provisions in the Bankruptcy Code was designed to clarify the bankruptcy court's power to prevent a utility from using its termination power to enforce payment of prepetition debts, as long as adequate security for payment of future bills is provided to the utility ... By the terms of section 366, a utility may not terminate the debtor's service for failure to pay prepetition arrearages, *but may terminate the debtor's account if the debtor fails, within twenty days, to post adequate assurance of payment for post petition services."* (Emphasis supplied)

*In re Begley,* 760 F.2d at 48–49.

In *Whittaker, supra,* electric service had been terminated two weeks before the filing of the petition, and was restored a week later upon the institution of the adversary action. As in the cases before me, PECO had a policy of requiring a security deposit from debtors, but not from new residential customers or similarly situated non-debtors. The Bankruptcy Court found this policy to be discriminatory, *In re Whittaker,* 84 B.R. 934, 943 (Bankr.E.D.Pa. 1988), and the District Court affirmed, *Whittaker, supra,* 92 B.R. at 115. The Bankruptcy Court also held that:

"The plaintiffs are not entitled to continuation of utility service past the initial twenty (20) day period set forth in § 366(b) unless they provide an adequate assurance of payment acceptable to the defendant or obtain a protective court order."

*In re Whittaker, supra,* 84 B.R. at 944. This finding was subsequently withdrawn as being unnecessary to the determination of the case. *See, Whittaker, supra,* 92 B.R. at 116. In the discussion of whether the debtors are entitled to attorney's fees

there is an extended discussion. The discussion makes clear that, although not an issue before the court, the question of what security is required *after* twenty days is an issue which would require separate consideration from the issue of the security to be required *before* twenty days.

Based on the foregoing, I do not find the cited cases authority for the proposition that after twenty days a debtor cannot be required to provide a security deposit.

The court below cites the following cases for the proposition that § 366 was not intended to provide utilities with greater protection in dealing with debtors than they possessed in their dealings with non-debtors: *In re Begley*, 41 B.R. 402, 406 (E.D. Pa.1984), aff'd *sub nom. Begley v. Philadelphia Electric Co.*, 760 F.2d 46 (3rd Cir. 1985), *Lloyd v. Champaign Tel. Co.*, 52 B.R. 653, 656 (Bankr.S.D.Ohio 1985), and *In re Keydata Corp.*, 12 B.R. 156, 158, n. 2 (1st Cir. BAP 1981).

While these cases support the proposition stated by the Court below, they do not support the proposition that a debtor cannot be required to provide a security deposit after twenty days.

The District Court in *Begley* describes the situation as follows:

"Plaintiffs filed a voluntary petition in bankruptcy under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–766. At the time of their filing, plaintiffs had a substantial unpaid overdue arrearage in their electric bill. Pursuant to 11 U.S.C. 366(b), as described more fully below, the Begleys posted a security deposit with PECO adequately to assure payment for post-petition service. After their petition in bankruptcy, the Begleys again fell behind in their payment."

*In re Begley, supra,* 41 B.R. at 403. In commenting on the deposit made by the Begleys, the Third Circuit said:

"Josephine and Daniel Begley filed a petition for bankruptcy under Chapter 7 on May 28, 1982. At that time, they were substantially indebted to PECO. PECO demanded and received an 'adequate assurance' of payment of future bills in the amount of $312.00. Such an

assurance is authorized by 11 U.S.C. § 366(b)."

*Begley, supra,* 760 F.2d at 47. The Third Circuit went on to say:

"By the terms of section 366, a utility may not terminate the debtor's service for failure to pay a pre-petition arrearages, but may terminate the debtor's account if the debtor fails, within twenty days, to post adequate assurance of payment for post petition services."

*Begley, supra,* 760 F.2d at 48–49.

In *Lloyd v. Champaign Telephone Co.* 52 B.R. 653 (Bankr.S.D.Ohio 1985). The Court said:

"From the testimony of defendant's commercial manager, it appears that debtor's account was reviewed because of the filing of debtor's bankruptcy petition. Although the general rule of § 366(a) forbids defendant from discontinuing debtor's service solely because of the bankruptcy filing, § 366(b) contains an express exception to this prohibition. § 366(b) permitted the defendant to discontinue debtor's telephone service when neither the trustee nor the debtors furnished a security deposit within the required time period.

[O]nce the twenty-day period has expired, the utility is in the driver's seat and may alter, refuse, or discontinue service as it sees fit unless the debtor has furnished the adequate assurance of payment demanded by the utility. If the debtor, the creditor's committee, or other party in interest is dissatisfied with the 'adequate assurance of payment' demanded by the utility, then such party may apply to the court for an order seeking a reasonable modification of it. In other words, once the twenty-day period has expired, the utility may act unilaterally to terminate service if adequate assurance of payment has not been furnished. *In re Stagecoach Enterprises, Inc.,* 1 B.R. 732, 734 (Bankr.M.D.Fla. 1979)."

*Lloyd, supra,* 52 B.R. at 655–656.

In *In re Keydata Corp.* the utility was appealing the adequacy of a $25,000 deposit previously ordered for a commercial cus-

tomer pursuant to § 366(b). In finding that the $25,000 deposit was adequate in the circumstances, the court held that the "adequate assurance of payment" language of § 366(b) did not require an "absolute guarantee of payment", but only protection against "an unreasonable risk of nonpayment". The court, in explaining this holding, said:

> "It does not appear in the Code or the legislative history that Congress ever intended that utilities receive higher protection in chapter 11 than they enjoy in regular dealings with customers outside the bankruptcy court."

*In re Keydata, supra*, 12 B.R. at 158, n. 2. This is the language from *Keydata* on which the appellees and the court below rely in their argument against a § 366(b) deposit. But, significantly, the Court in *Keydata* never questioned whether a security deposit should have been made. The only issue was the adequacy of the amount.

## CONCLUSION

In summary, the language of § 366 has been tacitly interpreted by courts since its enactment in 1978 to be a specific exception to the general prohibition against discrimination found in § 366(a). The courts, beginning with *In re Stagecoach Enterprises, supra* in 1979, and including the Third Circuit in *In re Begley, supra*, have permitted utilities to require a reasonable security deposit after 20 days. No requirement that, before a post twenty days deposit can be required of a debtor, a similar deposit must have been required of non-debtors, can be found in any of the cases cited.

In the cases before me the security deposit was required to be presented more than twenty days after the date of the order for relief. This is explicitly permitted by § 366(b), as interpreted by the courts and explained by the section's legislative history. Consequently I must reverse the court below and remand for further proceedings consistent with this opinion.