907 F.2d 1418
 23 Collier Bankr.Cas.2d 1043, 20 Bankr.Ct.Dec. 1235,
Bankr. L. Rep. P 73,519
 In re HANRATTY, Kevin F. Hanratty, Patricia, Debtor.
HANRATTY, Kevin F., Hanratty, Patricia
v.
PHILADELPHIA ELECTRIC CO. and Edward Sparkman, Trustee.
Appeal of Kevin and Patricia HANRATTY.
In re MUCERINO, Dennis, Mucerino, Dorothy
v.
PHILADELPHIA ELECTRIC CO. and Edward Sparkman, Trustee.
Appeal of Dennis and Dorothy MUCERINO.
 Nos. 89-2070 and 89-2071.
 United States Court of Appeals,
Third Circuit.
 Argued June 19, 1990.
Decided July 18, 1990.
 
 Margaret E. Taylor (argued), Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for appellants.
 T.H. Maher Cornell (argued), Philadelphia, Pa., for appellee.
 Before GREENBERG, ALITO and WEIS, Circuit Judges.OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 These matters are before this court on appeal from an order of the district court of November 15, 1989, reversing an order of the bankruptcy court of April 26, 1989, which granted summary judgment to Kevin and Patricia Hanratty and Dennis and Dorothy Mucerino, the debtors. See Hanratty v. Philadelphia Elec. Co., 107 B.R. 55 (E.D.Pa.1989). The essential facts in this case are not in dispute.
 
 
 2
 On November 16, 1988, and December 5, 1988, the Mucerinos and the Hanrattys filed voluntary petitions in bankruptcy under Chapter 13 of the Bankruptcy Code. The debtors are residents of Philadelphia and, as they were indebted to Philadelphia Electric Company for residential electric service, each listed Philadelphia Electric as a creditor. Philadelphia Electric is their only source of electrical service.
 
 
 3
 On December 5, 1988, Philadelphia Electric sent a letter to Dennis J. Mucerino reading as follows:
 
 
 4
 Re: Assurance of Payment $90.00 Acct # 23-16-43-1353 File: 88-14028
 
 Dear Mr. Mucerino:
 
 5
 We have been advised that you have filed a petition under the Bankruptcy Code. As a result all bills for service prior to the date of petition will be subject to the jurisdiction of the court.
 
 
 6
 The Code provides, in part, that a utility may require adequate assurance of payment from the debtor. Therefore, the sum of $90.00 is hereby being requested in accordance with the Bankruptcy Code, on or before January 13, 1989. Failure to comply with this request shall result in termination of service.
 
 
 7
 You are further advised that all costs for utility service incurred after the date of your filing a petition as aforesaid, are due and payable when rendered, and are not dischargeable under the provision of the code.
 
 
 8
 Should you have any questions concerning the foregoing, kindly contact the Credit Services Department before the date specified above at 841-6063 or 841-6047.
 
 
 9
 On December 28, 1989, Philadelphia Electric sent a letter to the Hanrattys identical to that sent to Mucerino except that it made reference to different account and file numbers and requested a $100 deposit on or before February 6, 1989.
 
 
 10
 On December 16, 1988, the Mucerinos brought an adversary proceeding against Philadelphia Electric "seeking declaratory and injunctive relief to enforce the provisions of 11 U.S.C. Sec. 366, requiring [Philadelphia Electric] to continue utility service to [their] residence without the payment of a security deposit."[1] They alleged that while a $90 deposit had been requested from them, Philadelphia Electric does not require a deposit from new residential customers who are not bankruptcy debtors unless they owe a prior debt to Philadelphia Electric. They charged that Philadelphia Electric, by requiring a deposit from them while not requiring the same from new customers, "has engaged in discriminatory conduct in violation of 11 U.S.C. Sec. 366." They therefore asked that the court declare the requirement for a deposit to be discriminatory under 11 U.S.C. Sec. 366 and that Philadelphia Electric be enjoined from terminating their electric service. On January 17, 1989, the Hanrattys filed a complaint against Philadelphia Electric which tracked that of the Mucerinos, with modifications to reflect the changes in the dates and amount of deposit.
 
 
 11
 Following the filing of the adversary proceedings, Philadelphia Electric stipulated, though the deposits had not been made, that it would not terminate service to the debtors during the pendency of the adversary proceedings. Furthermore, the parties agreed that the matters could be decided on a consolidated basis on a summary judgment motion.
 
 
 12
 On April 26, 1989, the bankruptcy court granted the debtors summary judgment. In its memorandum, the bankruptcy court quoted the following answer to an interrogatory by Philadelphia Electric explaining its policy regarding deposits from customers not filing for bankruptcy:
 
 
 13
 [Philadelphia Electric] requests a security deposit at the time of application for commercial service for those commercial customers who have not established a credit history or who have an unsatisfactory credit history. For applicants for residential service, while [Philadelphia Electric], as a matter of tariff, may require a deposit or other guarantee satisfactory to the company as security for the payment of final bills and compliance with the company's rules and regulations before the company will furnish service where an applicant's credit is not established, the company as a matter of policy and practice, has chosen, in its discretion, not to request security deposits from applicants for residential service.[2]
 
 
 14
 The bankruptcy court then indicated that it was this policy of requiring a deposit only from commercial customers but not "from new residential customers" which underlies this case. It said that the debtors argued that Philadelphia Electric could not demand a deposit from residential customers in bankruptcy if it did not do so from new residential customers, because it was precluded from discriminating against bankruptcy debtors by 11 U.S.C. Sec. 366(a) which provides:
 
 
 15
 (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
 
 
 16
 The bankruptcy court noted that Philadelphia Electric urged that it was permitted to request the security deposits by 11 U.S.C. Sec. 366(b) which provides:
 
 
 17
 (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
 
 
 18
 The bankruptcy court indicated that the purpose of 11 U.S.C. Sec. 366(a) is to provide for utility service without interruption. See In re Monroe Well Service, Inc., 83 B.R. 317, 321 (Bankr.E.D.Pa.1988). It then said that 11 U.S.C. Sec. 366(a) forbids a utility from discriminating against a debtor on the basis of a preexisting debt as well as by reason of the commencement of a bankruptcy case. Thus, in its view, "to demand a deposit from a debtor when the utility company would not make the same demand of a new customer is to discriminate based upon the prepetition claim."
 
 
 19
 The bankruptcy court acknowledged, however, that Philadelphia Electric's position "is not without support," as 11 U.S.C. Sec. 366(b) states in its first sentence that a utility company may discontinue service if a security deposit is not furnished within 20 days. The court then indicated that, predicated "upon a literal reading of this sentence," a number of courts have allowed a utility to demand a deposit even though its own regulations or state law do not support the demand. In this regard it cited the following cases: In re Smith, Richardson & Conroy, Inc., 50 B.R. 5 (Bankr.S.D.Fla.1985); In re Marion Steel Co., 35 B.R. 188 (Bankr.N.D.Ohio 1983); In re Santa Clara Circuits West, Inc., 27 B.R. 680 (Bankr.D.Utah 1982); In re Northwest Recreational Activities, Inc., 8 B.R. 7 (Bankr.N.D.Ga.1980).
 
 
 20
 Ultimately, the bankruptcy court decided that the purposes of 11 U.S.C. Sec. 366, to limit the leverage a utility "could wield in collecting prepetition debts," while at the same time affording it "adequate protection for payment of postpetition services rendered," could be "achieved by requiring the utility to view the debtor as a new customer without any prior credit history with that utility." The court concluded that 11 U.S.C. Sec. 366 "clearly was not intended ... to provide utilities with greater protection in dealing with debtors than they possessed in their dealings with non-debtors." Thus, a "debtor should be treated as a new customer, no better and no worse." Therefore, as Philadelphia Electric "does not seek deposits from new residential customers it cannot demand deposits from these debtors."
 
 
 21
 Finally, the bankruptcy court indicated that 11 U.S.C. Sec. 366 does not leave the utility without protection, as the debtor may be as well situated to pay the current bill as a similarly situated individual who has not received a discharge. Furthermore, it cited its own decision in In re Kiriluk, 76 B.R. 979, 984 (Bankr.E.D.Pa.1987), for the proposition that upon the timely request of the utility, the court has the discretion to require the posting of a security deposit. It indicated that:
 
 
 22
 [t]he burden, however, is upon the utility to present evidence of the need for such protection--which would not be met by simply showing that the individual filed a bankruptcy petition. (Where state law or company policy permits the utility to demand a deposit from new customers, then it is the debtor who must present evidence that such a deposit, in whole or in part, is unwarranted.)
 
 
 23
 Philadelphia Electric appealed to the district court, which decided the matter in an opinion of November 15, 1989, reversing the bankruptcy court.[3] Hanratty v. Philadelphia Elec. Co., 107 B.R. at 55. The district court indicated that the purpose of 11 U.S.C. Sec. 366 is "to permit a debtor to continue to receive postpetition utility service that may be monopolistic (e.g., only one electric company services an area), and are essential to a minimum standard of living." 107 B.R. at 57. In support of this conclusion, the court quoted a Senate Report regarding the section:
 
 
 24
 This section gives debtors protection from a cut-off of service by a utility because of the filing of a bankruptcy case. This section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility. The utility may not alter, refuse, or discontinue service because of the nonpayment of a bill that would be discharged in the bankruptcy case. Subsection (b) protects the utility company by requiring the trustee or the debtor to provide, within ten days, adequate assurance of payment for service provided after the date of the petition.[4]
 
 
 25
 S.Rep. No. 95-989, 95th Cong., 2d Sess. 60 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787 at 5846.
 
 
 26
 The district court indicated that cases such as Whittaker v. Philadelphia Elec. Co., 92 B.R. 110 (E.D.Pa.1988), concerning restoration of service to a debtor within the 20 day period following the order for relief, were not controlling. 107 B.R. at 57. It concluded that:
 
 
 27
 [T]he language of Sec. 366 has been tacitly interpreted by courts since its enactment in 1978 to be a specific exception to the general prohibition against discrimination found in Sec. 366(a). The courts, beginning with In re Stagecoach Enterprises,[5] supra in 1979, and including the Third Circuit in In re Begley,[6] supra, have permitted utilities to require a reasonable security deposit after 20 days. No requirement that, before a post twenty days deposit can be required of a debtor, a similar deposit must have been required of non debtors, can be found in any of the cases cited.
 
 
 28
 107 B.R. at 60.
 
 
 29
 This appeal by the debtors followed. We have jurisdiction under 28 U.S.C. Sec. 158(d).
 
 
 30
 As we understand the debtors' contentions, they view the bankruptcy court's opinion as having both legal and discretionary components and they urge that we accept its conclusions in both respects. The legal component is not complicated. The debtors urge that Philadelphia Electric violated the anti-discrimination provisions of 11 U.S.C. Sec. 366(a) by requiring them to post deposits which would not have been required from new residential customers. Thus, they contend that on a plenary standard of review, the district court erred in reversing the bankruptcy court. The debtors further argue that the discretionary component of the bankruptcy court's opinion was its determination, pursuant to 11 U.S.C. Sec. 366(b), which permits the court to modify a request for security, that no security would be required. Thus, the debtors maintain that the district court erred in exercising plenary review over this aspect of the bankruptcy court's order and in ultimately reversing it.
 
 
 31
 We do not agree with the debtors' characterization of the bankruptcy court's opinion. It is clear that the bankruptcy court decided this matter on the basis that it was unlawful for Philadelphia Electric to request the security deposits, while it had no such requirement for new customers not in bankruptcy. This was undoubtedly a legal determination predicated upon its construction of 11 U.S.C. Sec. 366 and thus the district court properly exercised plenary review and so shall we. See In re Whittaker, 882 F.2d 791, 793 (3d Cir.1989).
 
 
 32
 While it is true the bankruptcy court indicated that upon the timely request of a utility the court could exercise its discretion to require a debtor to post a security deposit, it certainly was not exercising that discretion here as Philadelphia Electric did not make such a request.[7] Rather, Philadelphia Electric made unilateral extra-judicial requests of the debtors and was in court because the debtors sought to invalidate the requests.
 
 
 33
 If the bankruptcy court's decision had been predicated on an exercise of discretion under 11 U.S.C. Sec. 366(b), it would have made particularized findings recognizing, at least implicitly, that Philadelphia Electric could lawfully make a request for security from the debtors, but that on the facts of these cases no security was necessary. We emphasize that rather than do that the bankruptcy court held that, in light of what it perceived to be the discriminatory treatment of the debtors as compared to new customers not in bankruptcy, no security could be required.[8]
 
 
 34
 It seems to us that, at least with respect to the problem at hand, 11 U.S.C. Sec. 366 is perfectly clear. Under subsection (a) a utility may not, except as provided in subsection (b), "alter, refuse, or discontinue service to or discriminate against, ... the debtor" solely because of the commencement of a case in bankruptcy, or because a debt owed by the debtor to the utility for service rendered before the order for relief was not paid when due. While Congress has not indicated in subsection (a) the class of persons against whom a debtor is to be compared so that a determination may be made as to whether the debtor has been the subject of discrimination, in deciding this appeal we will accept the debtors' implicit contention that the class must be other customers in the same circumstances as the debtor, except that they were not involved in a bankruptcy case or did not owe a debt to the utility which was not paid when due before the order for relief.[9]
 
 
 35
 Neither does subsection (a) indicate what acts of differential treatment could constitute discrimination, though some immediately come to mind. For example, a utility might discriminate by charging the debtor a higher rate than other customers for the same service, or requiring more frequent or timely payments from the debtor than other customers.[10] A natural gas utility could discriminate by requiring a bankrupt customer to accept service which could be interrupted during periods of fuel shortfall.
 
 
 36
 Under subsection (b), a utility is expressly authorized to request a debtor to furnish adequate assurance of payment in the form of a security deposit and may discontinue service if it is not provided within 20 days after the order for relief. Philadelphia Electric followed this subsection, but allowed the debtors longer than the minimum 20 day period to post the security. Thus, under the unmistakable wording of the statute, we can hardly avoid affirming the order of the district court.
 
 
 37
 The debtors seek to avoid the plain language of 11 U.S.C. Sec. 366, by pointing out in their brief that "it is most significant that the text of Sec. 366(b) parallels that of Sec. 366(a) and permits a utility, in specified circumstances, to alter, refuse or discontinue service but omits the word 'discriminate' which is found in Sec. 366(a)." (Emphasis in original.) Accordingly, the debtors contend that when altering, refusing or terminating service, Philadelphia Electric still may not discriminate against them as compared to new customers. Thus, they seem to believe that for a request by a utility for security under subsection (b) to be lawful, if the utility does not ordinarily request security from new customers, the subsection must completely parallel subsection (a) and authorize the utility to "discriminate" against a debtor not posting security. We do not accept this argument because we recognize that it is common practice for Congress to pass laws drawing classifications. Furthermore, if subsection (b) provided that a utility could "discriminate" against a debtor failing to furnish adequate security the subsection would be overbroad as a utility, rather than being allowed only to alter, refuse or discontinue service to debtors not furnishing adequate assurance of payment, would be authorized to charge them higher rates or require more timely and frequent payments from them as compared to other customers.
 
 
 38
 What Congress intended is clear. In subsection (a), it broadly protected debtors from having their service altered, refused or discontinued and further protected debtors from discrimination except as permitted by subsection (b). In subsection (b) it carved a narrow exception, applicable only after 20 days following the order for relief, permitting utilities to request adequate assurance of payment, but otherwise leaving undisturbed the broad protection of the debtors from discrimination. If the adequate assurance is not given, the utility may alter, refuse or discontinue service to the debtors but may not otherwise discriminate against them. Thus, Congress struck a balance between the general right of a creditor to refuse to do business with a debtor, see Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 85 (3d Cir.1988), and the debtor's need for utility services.
 
 
 39
 Our result is in complete harmony with "the purpose and policy" of 11 U.S.C. Sec. 366 which, as we have recognized, is "to prevent the threat of termination from being used to collect prepetition debts while not forcing the utility to provide services for which it may never be paid." Begley v. Philadelphia Electric Co., 760 F.2d 46, 49 (3d Cir.1985). Indeed, the bankruptcy court recognized that this was a purpose of 11 U.S.C. Sec. 366, but quite inexplicably thought that this purpose would be furthered by treating the debtors as new customers, even though a request for security for postpetition services in no way places pressure on a debtor to pay a prepetition debt. We could only reach the result urged by the debtors by engrafting a court-created exception on 11 U.S.C. Sec. 366 which would not further the purpose of that section. This we will not do.
 
 
 40
 Our opinion is, of course, not inconsistent with In re Whittaker, 882 F.2d at 791. There we held that the customer whose service had been discontinued by the utility was, upon filing a bankruptcy petition, entitled under 11 U.S.C. Sec. 366 to have her service restored without furnishing adequate assurance of payment. However, our result in Whittaker was dependent upon the request for restoration being made within 20 days of the order granting relief, 882 F.2d at 793, the period prior to which the debtor could be requested to post security. As Whittaker did not deal with a situation in which a request for security in compliance with 11 U.S.C. Sec. 366(b) was made, this case picks up where Whittaker left off. Indeed, Whittaker supports our literal reading of 11 U.S.C. Sec. 366. See 882 F.2d at 794-95. Furthermore, in Whittaker we did not reach a proffered discrimination issue predicated on the differing treatment of customers depending upon whether or not they were in bankruptcy. Id. at 793.
 
 
 41
 We also point out one other matter, though our result is not dependent on it. If the debtors are correct, Philadelphia Electric could avoid the discrimination by requiring new residential customers to post security. We should not be quick to reach a result which could lead to such an adverse consequence to residential consumers of utility services.
 
 
 42
 The order of November 15, 1989, will be affirmed.
 
 
 
 [1]
 The Mucerinos also named Edward Sparkman as a party as he is the standing trustee, as did the Hanrattys. However further reference will not be made to Sparkman as his position in this action is only formal. We also note that in In re Whittaker, 882 F.2d 791, 792 (3d Cir.1989), we indicated that Philadelphia Electric does not request a security deposit but rather seeks an " 'adequate assurance of payment' deposit." The parties here treat the terms as synonymous and thus we use them interchangeably. In fact, we perceive no difference between them
 
 
 [2]
 This answer was given by Philadelphia Electric in In re Whittaker, 84 B.R. 934 (Bankr.E.D.Pa.1988), aff'd, 92 B.R. 110 (E.D.Pa.1988), aff'd, 882 F.2d 791 (3d Cir.1989), but the company agrees it still represents its policy
 
 
 [3]
 The district court had jurisdiction under 28 U.S.C. Sec. 158(a)
 
 
 [4]
 Of course a 20 day period ultimately was adopted
 
 
 [5]
 The court was referring to In re Stagecoach Enterprises, Inc., 1 B.R. 732 (Bankr.M.D.Fla.1979)
 
 
 [6]
 This reference was to Begley v. Philadelphia Elec. Co., 760 F.2d 46 (3d Cir.1985). The district court quoted the following portion of Begley from 760 F.2d at 48-49:
 By the terms of section 366, a utility may not terminate the debtor's service for failure to pay pre-petition arrearages, but may terminate the debtor's account if the debtor fails, within twenty days, to post adequate assurance of payment for post-petition services.
 
 
 [107]
 B.R. at 59
 
 
 [7]
 We are not suggesting that we endorse the bankruptcy court's construction of 11 U.S.C. Sec. 366. Obviously under our opinion Philadelphia Electric did not need a court order to request a security deposit
 
 
 [8]
 The order of the district court provided that the bankruptcy court's order for summary judgment was reversed and "Philadelphia Electric Company is permitted to require a security deposit consistent with the express provisions of 11 U.S.C. Sec. 366(b)." The order then provided that "[t]hese matters are remanded to the Bankruptcy Court for further proceedings consistent with this Court's opinion." In their brief, the debtors do not suggest that the district court contemplated proceedings on the remand relating to modification of the request for security on the basis of a possible finding that adequate assurance of payment could be obtained with less security. Thus, while in their complaints the debtors asked for permission to pay the deposits in installments, this point is not mentioned in their brief on this appeal. We also point out that if the district court had remanded for further substantive proceedings, it is questionable whether we would have jurisdiction, as its order probably would not have been final. See, e.g., In re White Beauty View, Inc., 841 F.2d 524 (3d Cir.1988). Accordingly, we regard the bankruptcy court's function on the remand as only involving the ministerial act of entering an order
 
 
 [9]
 Conceivably the debtors could be compared to new residential customers of Philadelphia Electric who owe the company money from prior service, and we note that the debtors in their complaints alleged that such customers are required to make deposits. But we do not make this comparison, as Philadelphia Electric does not indicate in its brief that such new non-bankruptcy customers with a debt from prior service must make a deposit and in fact seems to suggest that no deposit is required from them. In any event it does not advance this basis for comparison of classes of customers in its brief
 
 
 [10]
 We recognize, of course, that discriminatory acts might well violate state law, but that hardly precludes Congress from protecting the debtor against them as well