**In re 499 W. WARREN STREET ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 91–01973.**

United States Bankruptcy Court, N.D. New York.

Nov. 15, 1991.

Hancock & Estabrook, Syracuse, N.Y., for debtor; John Clark, of counsel.

William C. Grossman, Syracuse, N.Y., for Niagara Mohawk Power Corp.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

On August 8, 1991, 499 W. Warren Street Associates Limited Partnership ("Debtor") moved by way of an Order to Show Cause for a temporary restraining order prohibiting Niagara Mohawk Power Corporation ("NiMo") from terminating utility service to Debtor's property. Concomitantly, Debtor moved for a hearing to determine whether NiMo is entitled to a utility deposit pursuant to § 366 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"), and ultimately seeks a permanent injunction prohibiting NiMo from terminating utility service to Debtor's property. The Order to Show Cause was executed by the Court on August 8, 1991, and a hearing was held on August 20, 1991. The matter was finally submitted for decision on September 3, 1991.

### JURISDICTION

The Court has jurisdiction over the parties and subject matter of this core proceeding by virtue of 28 U.S.C.A. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A, B, O) (West Supp. 1991).

### FACTS

The Debtor is a limited partnership engaged in the business of leasing office space in a building which it owns in Syra-

cuse, New York ("Property"). The Property is currently leased to 14 tenants, all of which require utility service to conduct their respective businesses. NiMo provides gas and electricity to much of upstate New York, including the greater Syracuse area.

On July 11, 1991, the Debtor filed a voluntary petition for relief under Chapter 11 of the Code. Although the Debtor was current on all of its obligations to NiMo as of that date, negotiations between the parties ensued concerning the necessity of the Debtor posting adequate assurance of payment of post-petition obligations in the form of a utility deposit, pursuant to Code § 366(b).

During the initial stage of these negotiations, the Debtor took the position that its favorable payment history obviated any need for such a deposit. NiMo acknowledged that the Debtor had a history of making consistent (though occasionally late) payments, but nonetheless demanded a deposit. By letter dated July 29, 1991, NiMo notified the Debtor that utility service to the Property would be terminated unless a deposit in the amount of $10,800 was received by August 5, 1991.[1] (See Exhibit B attached to Debtor's moving papers). After further negotiations, NiMo agreed to extend this deadline to August 9, 1991.

On August 7, 1991, the Debtor advised NiMo by letter that although it did not believe Code § 366(b) mandated the posting of a deposit under the circumstances, it would grant to NiMo a deposit in the amount of $5,000 as a way of expeditiously resolving the dispute. (See Exhibit D Attached to Debtor's moving papers). NiMo rejected this offer and reiterated its demand for a deposit in the amount of $10,800 by August 9, 1991.

Thus, on August 8, 1991, the Debtor moved for a determination as to whether it must accede to NiMo's demand for a utility deposit pursuant to Code § 366(b). The Debtor argues that it has remained current

on its obligations to NiMo post-petition and that, in the absence of any pre-petition arrears, Code § 366(b) does not require a debtor to post a utility deposit. NiMo disagrees with the Debtor's interpretation of Code § 366(b), and now demands a deposit in the amount of $13,847.00, representing the amount of the Debtor's highest monthly bill.

## DISCUSSION

Under Code § 366(a), a utility may not, *except as provided in subsection (b),* "alter, refuse, or discontinue service to or discriminate against ... the debtor" solely because of the commencement of a bankruptcy case, or solely because the debtor is not current on its pre-petition obligations to the utility. Subsection (b) does allow a utility to refuse or discontinue service after 20 days from the date of the order for relief if it has not received from the debtor or trustee adequate assurance of payment of obligations arising post-petition.

■ Thus, Code § 366(a) pertains to actions of a utility within 20 days after a bankruptcy petition is filed, and a debtor's utility service may not be terminated during that period simply because it has petitioned for relief under the Code, regardless of the status of its pre-petition account. *See Begley v. Philadelphia Electric Co.,* 760 F.2d 46 (3d Cir.1985); *In re Monroe Well Service, Inc.,* 83 B.R. 317 (Bankr. E.D.Pa.1987); *Whittaker v. Philadelphia Electric Co.,* 92 B.R. 110 (E.D.Pa.1988); *In re Roberts,* 29 B.R. 808 (E.D.Pa.1983); *In re Kiriluk,* 76 B.R. 979 (Bankr.E.D.Pa. 1987).

■ However, once the 20–day period has expired, Code § 366(b) allows a utility to terminate service if adequate assurance of future payment has not been provided, and is also effective regardless of the status of the debtor's pre-petition account. *See In re Hanratty,* 907 F.2d 1418, 1423

---

**1.** This initial demand for a deposit of $10,800 represents the Debtor's average monthly utility bill. NiMo asserts that it could have legitimately requested twice this amount, pursuant to the New York State Public Service Commission cri-

teria with respect to security deposits for commercial accounts. However, due to Debtor's favorable payment history, NiMo requested a deposit reflecting only one month's average usage.

(3d Cir.1990), *aff'g Hanratty v. Philadelphia Electric Co.,* 107 B.R. 55 (E.D.Pa. 1989); *Begley v. Philadelphia Electric Co.,* 760 F.2d 46, 48–49 (3d Cir.1985); *Lloyd v. Champaign Telephone Co.* 52 B.R. 653, 655–56 (Bankr.S.D.Ohio 1985); *In re Smith Richardson & Conroy, Inc.,* 50 B.R. 5, 6 (Bankr.S.D.Fla.1985); *In re Santa Clara Circuits West, Inc.,* 27 B.R. 680, 683–84 (Bankr.D.Utah 1982).

Thus, both subsections (a) and (b) are effective by their own terms irrespective of the status of a debtor's pre-petition account. *See id.* It is, therefore, surprising that, while seemingly clear on its face, Code § 366(b) has occasionally been subjected to peculiar judicial interpretation since its inception as part of the Code in 1978.

For example, in *In re Coury,* 22 B.R. 766 (Bankr.W.D.Pa.1982), the court held that a utility could not demand a security deposit of a debtor pursuant to Code § 366(b) if such debtor was not delinquent with respect to its pre-petition obligations to the utility. This court reasoned as follows:

> Section 366(b) can only be read in conjunction with Section 366(a). Section 366(a) states that a utility can only discriminate against a debtor who has defaulted prior to filing pursuant to Section 366(b); that is, by demanding security. The utility cannot read Section 366(b) as giving rights to security if there has been no default.

*Id.* at 767.

The *Coury* decision spawned a line of cases which reached the same conclusion based upon the same reasoning. *See In re Shirey,* 25 B.R. 247 (Bankr.E.D.Pa.1982); *In re Kelly,* 25 B.R. 249 (Bankr.E.D.Pa. 1982); *In re Demp,* 22 B.R. 331 (Bankr. E.D.Pa.1982). This despite the fact that there is otherwise no support for the contention that Code § 366(b) must be read in conjunction with § 366(a). Indeed, nothing in the legislative history of Code § 366 intimates as much. Nor should it, because the language of the statute is unambiguous.

Code § 366(a) expressly states that subsection (b) is an *exception* to subsection (a), as indicated by the preface "[e]xcept as provided in subsection (b) of this section ..." *In re Hanratty, supra* 907 F.2d at 1424; *Lloyd v. Champaign Telephone Co., supra* 52 B.R. at 655; *In re Santa Clara Circuits West, Inc., supra* 27 B.R. at 684. Thus, subsection (b) can be read in conjunction with subsection (a) only insofar as to give effect to the exception, which establishes the general proposition that a utility may not terminate service within 20 days from the order for relief, but may terminate service after 20 days if adequate assurance of future payment is not provided. *Id.*

The two subsections cannot be properly read in conjunction to establish that a utility may not demand adequate assurance of future payment in the absence of pre-petition arrears. *See id.* *See also In re Smith, Richardson & Conroy, supra* 50 B.R. at 6. The plain language of the statute simply does not limit a utility's right to adequate assurance on the basis of a debtor's pre-petition account status.

■ Therefore, the Court finds that NiMo is entitled to adequate assurance of post-petition payments. It is left for the Court to determine whether the deposit requested by NiMo in the amount of $13,-847.00 is "reasonably calculated to provide 'adequate assurance' of payment" for future services. *See Lloyd v. Champaign Telephone Co., supra* 52 B.R. at 656. *See also In re Santa Clara Circuits West, Inc., supra* 27 B.R. at 683; *Matter of Robmac, Inc.,* 8 B.R. 1 (Bankr.N.D.Ga.1979). What constitutes adequate assurance under Code § 366(b) is a factual question to be resolved on a case by case basis, and is not necessarily equivalent to a deposit approved or required by a state regulatory commission. *Id.*

■ In a Chapter 11 case, entitlement to adequate assurance should be reconciled with the rehabilitative function of Chapter 11, and requiring a debtor to post a cash deposit shortly after filing for relief may sometimes impose a financial burden which serves to thwart that function. *In re Santa Clara Circuits West, Inc., supra* 27

B.R. at 685; *Matter of Robmac, Inc.,* 8 B.R. at 4. Thus, when determining the sufficiency of proffered assurance, a court may consider, *inter alia,* the debtor's payment history, the debtor's net worth, and the debtor's present and future ability to pay post-petition obligations. *In re Santa Clara Circuits West, Inc., supra* 27 B.R. at 685.

As previously indicated the Debtor has a favorable payment history. The Debtor's balance sheet as of August 31, 1991 shows total assets in the amount of $3,429,843.43, and total liabilities in the amount of $2,645,007.58, indicating a net worth of $784,835.85. (See Debtor's Balance Sheet filed with the Court October 1, 1991). Additionally, the Debtor's most recent schedule of income and expenditures, for the period of July 11, 1991 to August 31, 1991, indicates net operating income of $49,823.81 for that period, prior to payment of real estate taxes and debt service. (See Debtor's Schedule of Income and Expenditures filed with the Court October 1, 1991).

■ Thus, it appears that the Debtor is solvent, and that it has the ability to meet its post-petition obligations to NiMo. However, this does not eliminate NiMo's right to adequate assurance under Code § 366(b). Instead, it merely reduces the level beyond which demand for a deposit would be exorbitant under the circumstances. Here, the Debtor's highest monthly bill was $13,847.00. While it is conceivable that future bills could approach or exceed such amount, the Court concludes that NiMo's original request for a deposit of $10,800 is more reasonable, given the Debtor's aforementioned financial condition and favorable payment history.

Therefore, based upon the foregoing discussion, it is hereby

ORDERED, that the Debtor provide to NiMo adequate assurance of payment for future services in the form of a cash deposit in the amount of $10,800; and it is further,

ORDERED, that the Debtor provide such adequate assurance to NiMo no later than December 1, 1991; and it is further,

ORDERED, that if the Debtor fails to provide such adequate assurance by December 1, 1991, NiMo shall have the right to terminate utility service to Debtor's property, pursuant to Code § 366(b).